No. 115,487

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MATTHEW B. GRIFFIN,
*Appellant*,

v.

KARI BRUFFETT,
SECRETARY OF THE KANSAS DEPARTMENT ON AGING AND DISABILITY SERVICES,
*Appellee*.

SYLLABUS BY THE COURT

1.

Although K.S.A. 2015 Supp. 59-29a01(b) declares that all time requirements referenced in the Sexually Violent Predator Act (SVPA) are directory rather than mandatory, it is clear that persons confined under the SVPA are entitled to yearly review and recommitment. See K.S.A. 2015 Supp. 59-29a08. However, there is no requirement that the annual review hearing must be held prior to the anniversary date of the sexually violent predator's (SVP) original civil commitment.

2.

Because a commitment under the SVPA is only valid for a year, absent a court order of recommitment there must be a point at which each year becomes final for purposes of challenging confinement during that period.

3.

Upon receipt of the annual written notice of the right to petition for release, a person confined as an SVP is put on notice that a recommitment order is imminent. So even if the court fails to enter a recommitment order, the filing of the annual evaluation

1

and notice of right or waiver would be a sufficient indication of finality of the *prior* year's commitment to start the 30-day clock for filing any challenge to said commitment.

4.

The third factor that is considered in the context of determining whether a showing of manifest injustice saves an untimely K.S.A. 60-1507 motion is whether the movant made a colorable claim of actual innocence. While there is no direct corollary to a claim of actual innocence in the context of an untimely K.S.A. 2015 Supp. 60-1501 petition raised by an SVP contesting his or her continued confinement, it is reasonable to require some showing that there has been a change in the petitioner's mental or physical health such that continued confinement is no longer necessary.

Appeal from Pawnee District Court; BRUCE T. GATTERMAN, judge. Opinion filed February 10, 2017. Affirmed.

*Matthew B. Griffin*, appellant pro se.

*Bryan C. Clark*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before PIERRON, P.J., ATCHESON and ARNOLD-BURGER, JJ.

ARNOLD-BURGER, J.: In Kansas, as in a few other states, once you have completed your prison term on a sexually violent crime, the State may seek to have you involuntarily civilly committed to a state hospital upon a determination by a jury that you are a sexually violent predator. The United States Supreme Court has upheld this process to be constitutional, and our Supreme Court has followed suit. *Kansas v. Hendricks*, 521 U.S. 346, 117 S. Ct. 2072, 138 L. Ed. 2d 501 (1997); *In re Care & Treatment of Hay*, 263 Kan. 822, 953 P.2d 666 (1998). But a key part of the process is an annual review by a judge to determine whether the individual's mental status remains such that he or she is still a danger to society. As the United States Supreme Court stated in *Hendricks*, this

prevents the civil commitment process from simply being another form of punishment for the same offense. 521 U.S. at 364.

Matthew B. Griffin has been involuntarily confined to Larned State Hospital for treatment as a sexually violent predator (SVP) since 2009. For 4 of the first 6 years of his confinement, even though an annual evaluation was completed by the State indicating the necessity for continued confinement, there was no judicial overview of that process as required by K.S.A. 2015 Supp. 59-29a08. As a result, he filed a petition for a writ of habeas corpus claiming that his statutory and constitutional rights were so severely violated that his confinement in the Sexual Predator Treatment Program (SPTP) has been illegal since 2010. He further asserts that the only possible remedy for the harm he has suffered is immediate release. The district court summarily dismissed the petition. Although we are troubled by the general lack of attention by the district court to the periodic review component of due process for persons confined under the Kansas Sexually Violent Predator Act (SVPA), we must agree that summary dismissal was proper under the unique facts of this case, for the reasons we set out below.

FACTUAL AND PROCEDURAL HISTORY

The facts are not in dispute and are outlined as set forth in the district court order denying Griffin's petition.

- **January 2, 2009**:  Griffin was determined to be an SVP and was committed to the SPTP at Larned State Hospital.
- **December 2009**:  First annual examination completed finding that Griffin was not a suitable candidate for transitional release.
- **February 2010**:  Griffin acknowledges receipt of the annual notice, and the report was submitted to the Saline District Court but was never placed in the court file.

3

- **2010**: No court order was ever entered recommitting Griffin pursuant to the first annual report.

- **February 2011**: Second annual examination completed.

- **May 2011**: Griffin agreed to remain in treatment and waived his right to further proceedings.

- **May 27, 2011**: Saline County District Court entered order continuing Griffin's commitment to the SPTP.

- **December 29, 2011**: Third annual examination completed finding that Griffin's mental abnormality or personality disorder had not so changed that it would be safe for him to be placed in transitional release.

- **January 17, 2012**: Griffin acknowledged receipt of the annual notice and signed below the following statement: "'If I desire to pursue further proceedings in this matter, I understand that I must initiate those separately from this response.'" The report was forwarded to the Saline District Court, but it does not appear in the court file.

- **2012**: No court order was ever entered recommitting Griffin pursuant to the third annual report.

- **December 2012:** Fourth annual examination was completed. Griffin acknowledged receipt of the annual notice and signed below the following statement: "'If I desire to pursue further proceedings in this matter, I understand that I must initiate those separately from this response.'" The report was forwarded to the Saline District Court and to Griffin's court-appointed attorney, but it does not appear in the court file.

- **2013**: No court order was entered recommitting Griffin pursuant to the fourth annual report.

- **December 2013:** Fifth annual examination was completed finding that Griffin's mental abnormality or personality disorder had not so changed that it would be safe for him to be placed in transitional release. Griffin acknowledged receipt of

4

the annual notice and signed below the following statement: "'If I desire to pursue further proceedings in this matter, I understand that I must initiate those separately from this response.'" The report was forwarded to the Saline District Court and to Griffin's court-appointed attorney, but it does not appear in the court file.

- **2014**: No court order was ever entered recommitting Griffin pursuant to the fifth annual report.

- **December 2014:** Sixth annual examination was completed finding that Griffin's mental abnormality or personality disorder had not so changed that it would be safe for him to be placed in transitional release. Griffin was given notice regarding his right to petition for release. The report was forwarded to the Saline District Court.

- **March 30, 2015:** A court order was entered continuing Griffin's commitment to the custody of the Secretary for control, care, and treatment.

- **April 28, 2015:** Griffin's petition for writ of habeas corpus filed.

- **November 30, 2015**: Seventh annual examination was completed, again finding that Griffin's condition had not changed in any manner to warrant release.

- **January 13, 2016**: The court issued an order noting that Griffin had been provided an independent evaluation, and on January 11, 2016, Griffin's attorney announced to the court that after reviewing the evaluation, Griffin no longer wished to seek transitional release related to the 2014 (sixth) or 2015 (seventh) annual reports. Accordingly, he waived any objections as related to any right to a hearing he might be entitled to on those reports.

Griffin did not dispute the district court's fact findings on appeal. Instead, Griffin argues that his commitment was effectively vacated on January 2, 2010, when the State failed to hold the first annual review hearing—1 year after his commitment to the SPTP. Accordingly, he contends that he has been unlawfully confined since that date.

5

The district court summarily dismissed Griffin's petition finding: the claim of error in year 2, regarding the 2011 recommitment order, was not timely because there was a final order entered that year and Griffin did not appeal or file a petition at that time; Griffin generally failed to allege errors that were shocking to the conscience so that they could not be considered as part of a petition for habeas corpus; Griffin failed to present evidence of ineffective assistance of counsel; and, Griffin failed to present sufficient evidence to overcome the presumption that the SVPA is constitutional. The district court concluded:

> "Further, it is clear from the record that Griffin has received a current examination of his mental condition every year from and after the date of his commitment, and most recently following appointment of counsel and receipt of independent examination withdrew his request to seek transitional release and no longer challenged the findings of the annual reports for 2014 and 2015."

Griffin appeals.

## ANALYSIS

*The district court did not err when it summarily dismissed Griffin's petition for a writ of habeas corpus.*

In his petition for habeas corpus, Griffin alleged that the proper procedures for continuing his confinement were not followed during his first, second, third, fourth, fifth, and sixth years in the SPTP. As a result, he claimed that his statutory and constitutional rights were so severely violated that his confinement in the SPTP has been illegal since 2010 and that the only possible remedy for the harm he has suffered is immediate release. Griffin's first, second, and third issues on appeal repeat these claims and argue that the district court erred in summarily dismissing his petition. Because the arguments that Griffin makes in these sections overlap, they will be considered together here.

6

To state a claim for relief under K.S.A. 60-1501, a petition must allege "shocking and intolerable conduct or continuing mistreatment of a constitutional stature." *Johnson v. State*, 289 Kan. 642, 648, 215 P.3d 575 (2009). "[I]f, on the face of the petition, it can be established that petitioner is not entitled to relief, or if, from undisputed facts, or from incontrovertible facts, such as those recited in a court record, it appears, as a matter of law, no cause for granting a writ exists," then summary dismissal is proper. 289 Kan. at 648-49. An appellate court exercises unlimited review of a summary dismissal. 289 Kan. at 649.

Moreover, "a patient in the custody of the secretary for aging and disability services pursuant to K.S.A. 59-29a01 et seq., and amendments thereto, shall file a petition for writ . . . within 30 days from the date the action was final." K.S.A. 2015 Supp. 60-1501(c).

*A general examination of the annual review process for persons confined under the SVPA.*

Griffin argues that the district court failed to follow the proper procedures for continuing his confinement in the SPTP which violated his right to procedural due process in a way that was shocking to the conscience. SVPs' procedural rights during the annual review process are outlined in and protected by K.S.A. 2015 Supp. 59-29a08. The statute requires that each year, a psychological evaluation be made of each committed individual. This is typically done by someone employed by the Kansas Department of Aging and Disability Services (KDADS), but if an SVP would like an independent evaluation of his or her mental condition, he or she is entitled to retain or request appointment of a qualified professional to perform it. The result of this examination is to be filed with the district court that committed the individual, along with a notice signed by the individual. The notice makes the person aware of his or her right to petition the

7

district court for release from the program even if the Secretary of the KDADS requests recommitment based on the results of the annual evaluation.

Once it receives the evaluation and notice, the district court must conduct a preliminary review hearing at which it determines whether the individual's mental status remains such that he or she is still a danger to society. See *In re Care & Treatment of Burch*, 296 Kan. 215, 220, 291 P.3d 78 (2012). The SVP is not entitled to be present at the hearing but may be represented by counsel. K.S.A. 2015 Supp. 59-29a08(a). If the district court concludes that there is probable cause to believe that the individual is no longer a danger, it must hold a full hearing on the matter at which the SVP is entitled to be present with retained or court-appointed counsel. K.S.A. 2015 Supp. 59-29a08(c). At that hearing, the burden is on the State to prove beyond a reasonable doubt that the SVP is not safe to be released. *In re Burch*, 296 Kan. at 221. If after either the preliminary hearing or the full hearing, the district court determines that the individual is not safe for release, the district court should enter an order recommitting the person to the program for another year. K.S.A. 2015 Supp. 59-29a08(d). If the district court determines that the individual is safe to be placed in transitional release, the court will order the SVP to be so moved. K.S.A. 2015 Supp. 59-29a08(e).

In short, K.S.A. 2015 Supp. 59-29a08 requires a yearly review of a committed individual's progress in the treatment program, notice to the committed individual during the review process, and judicial oversight with the same constitutional protections afforded to persons during commitment proceedings under K.S.A. 2015 Supp. 59-29a06.

The Supreme Court of the United States considered whether the SVPA (K.S.A. 59-29a01 *et seq.* [Furse 1994]), including K.S.A. 59-29a08, was constitutional in *Hendricks*, 521 U.S. 346. There, the Court found that the SVPA "comports with due process requirements and neither runs afoul of double jeopardy principles nor constitutes an exercise in impermissible *ex post facto* lawmaking." *Hendricks*, 521 U.S. at 371. Our

8

Supreme Court has subsequently considered the SVPA's compliance directly and found that the act sufficiently protects individuals' rights. *In re Care & Treatment of Hay*, 263 Kan. 822, 831-33, 953 P.2d 666 (1998). This court has reviewed the act even more recently and has emphasized that the SVPA is facially constitutional but that district courts must follow the statutory mandates or risk violating due process rights in individual cases. See *In re Care & Treatment of Zishka*, 51 Kan. App. 2d 242, 246, 343 P.3d 558 (2015); *In re Care & Treatment of Miles*, 42 Kan. App. 2d 471, 476, 480, 213 P.3d 1077 (2009).

Failure to follow the statutory mandates may rise to the level of shocking to the conscience so that an individual's claim may survive summary dismissal if there is evidence of indifference by government actors to their statutory duties. *Johnson*, 289 Kan. at 653. During 4 out of the 6 years Griffin complains that the district court took no action to review Griffin's confinement or to recommit him to the SPTP. This pattern of behavior is shocking to the conscience so that Griffin's claim survives this first procedural barrier.

While the district court was shockingly indifferent to its statutory and constitutional obligations in each of the 6 years Griffin challenged in his writ, other procedural barriers bar relief for all but year 6.

*Griffin's claims are untimely for all but year 6 of his confinement.*

During each of his first 6 years in the SPTP, the district court failed to follow the proper procedures—outlined in K.S.A. 2015 Supp. 59-29a08—to continue his confinement, thereby violating his right to procedural due process. In the first, third, fourth, and fifth years, the violations were particularly significant and egregious. During those years, psychological evaluations were completed and notices were provided to and signed by Griffin; these documents were allegedly mailed to the district court each year

9

but were never filed. Griffin did not receive a review hearing, or even in-chambers review, and no order was entered by the district court recommitting him to the program in any of these years. Clearly, Griffin was not afforded the basic statutory protections that are meant to ensure that the liberty of civilly committed individuals is not constrained any longer than is absolutely necessary to protect the general public.

Because there were no annual reviews held or orders entered recommitting Griffin in years 1, 3, 4, and 5, the district court concluded that Griffin's challenge was not untimely as to these years. But this result seems at odds with the otherwise strict time constraints for filing a K.S.A. 2015 Supp. 60-1501 petition. See K.S.A. 2015 Supp. 60-1501(b) (setting a 30-day time limit for filing a petition).

Although K.S.A. 2015 Supp. 59-29a01(b) declares that all time requirements referenced in the SVPA are directory rather than mandatory, it is clear that persons confined under the act are entitled to yearly review and recommitment. See K.S.A. 2015 Supp. 59-29a08. However, there is no requirement, as alleged by Griffin, that the annual review hearing must be held prior to the anniversary date of the SVP's original civil commitment. It is also undisputed that, without fail, Griffin received an annual evaluation. It is also undisputed that Griffin never requested a hearing despite receiving notification of his right to do so. But that said, clearly the State cannot completely stray from this mandate without violating the constitutional rights of those committed under the act. See *Hendricks*, 521 U.S. at 364. In *Hendricks*, the United States Supreme Court based its holding that the Kansas SVPA did not unconstitutionally impinge on committed individuals' rights in part on its finding that the act contained sufficient procedural safeguards to protect SVPs' rights. 521 U.S. at 364-66; see K.S.A. 2015 Supp. 59-29a08. One such safeguard is to limit "[t]he maximum amount of time an individual can be incapacitated pursuant to a single judicial proceeding [to] one year." 521 U.S. at 364. This limitation ensures that SVPs are not detained indefinitely and that they are not

10

subject to continued confinement when their mental conditions have changed so that they are no longer a danger to society. 521 U.S. at 364.

Because a commitment is only valid for a year, there must be a point at which each year becomes final for purposes of challenging confinement during that period. However, because the SVPA is not clear on issues of timing and allows for some variance regarding the completion of recommitment proceedings, the date at which a year's commitment becomes final must be based on something other than a strict calendar year or number of days. "When statutes have been silent as to a period of time, courts have read in a 'reasonable time' into the statutes." *H.T.E., Inc. v. Tyler Technologies., Inc.*, 217 F. Supp. 2d 1255, 1261, n.9 (M.D. Fla. 2002). Accordingly, it would certainly be reasonable to conclude that in the absence of a clear court order indicating finality, a commitment order for 1 year would be final, at the latest, on the date that a new commitment order is issued for the ensuing year. It is that act that begins the recommitment for a new year, making whatever happened in the prior year essentially irrelevant or moot.

Upon receipt of the annual written notice of the right to petition for release, a person confined as an SVP is put on notice that a recommitment order is imminent. So it would also be reasonable, in the absence of a clear court order indicating finality, to deem the day the annual evaluation and notice of right or waiver are filed to be the cutoff for challenging the *prior* year's commitment. So even if the court fails to enter a recommitment order, the filing of the annual evaluation and notice of right or waiver would be a sufficient indication of finality of the prior year's commitment to start the 30-day clock for filing any challenge to said commitment.

Making the day the annual evaluation and notice are filed the cutoff for challenging the prior year's commitment ensures that a number of competing interests are honored. First, it recognizes the need for finality. Second, it ensures an opportunity for a

11

meaningful remedy. When review and recommitment occurs yearly, errors need to be addressed quickly for remedies to be meaningful. When, as here, an SVP challenges a commitment or lack thereof several years in the past, it is difficult to fashion a remedy. Simply ordering a hearing at that point is meaningless because even if the court were to find that during a prior year the SVP's mental condition had improved such that transitional release was appropriate at that time, the fact that the SVP was recommitted to a lower level in the program in the current year would control and the individual would remain in full confinement. This is because the SPTP allows for SVPs to progress and regress in the program—the direction of progress is not linear. See K.S.A. 2015 Supp. 59-29a08(f), (g). Even an SVP who is granted conditional release is subject to a return to full confinement if it is determined that changes in his or her mental condition warrant it. See K.S.A. 2015 Supp. 59-29a19.

Here, for instance, perhaps transitional release was appropriate for Griffin even as recently as his fifth year in the program (generally calendar year 2014). If Griffin had been moved into transitional release at that time, if he regressed in his sixth year, he could have been removed from transitional release and placed back at a lower step in the program. Since Griffin was recommitted for a sixth year to full confinement upon his stipulation without an evidentiary hearing, it is safe to assume that if he had been placed in transitional release in his fifth year, he would have been withdrawn from transitional release in his sixth. Therefore, a hearing on Griffin's fifth (or fourth, third, etc.) year status after his sixth year recommitment would not benefit him because his current evaluation would trump it in terms of his placement within the program.

Finally, making the filing of a new evaluation and notice the cutoff point to begin the 30-day limit for a challenge to the previous year's commitment is ideal because it provides SVPs with some notice that the time to challenge is now or never. Even if a district court and/or attorney completely fails to communicate with a committed person during a year's annual review process, as allegedly happened here, the SVP must

participate in the evaluation of his or her mental condition and must sign the annual notice form before it is filed with the district court. If these events are taking place for a new year and the SVP has not received a review for the previous year, it should set off alarm bells notifying the SVP that the district court may be planning on foregoing the annual review entirely, thereby prompting him or her to act.

Here, the 30-day time frame for Griffin to file a 60-1501 petition challenging his confinement during the first year began to run on May 27, 2011, when the second annual evaluation and notice were filed with the district court. Griffin, however, did not take any action challenging his first year's confinement until April 28, 2015—almost 4 years after the time to file a petition expired. Since nothing was ever filed with the district court during years 3, 4, and 5, even if we assume that the statute of limitations did not begin running for any of these years until Griffin's sixth evaluation and notice were filed with the district court on February 2, 2015, the petition was filed more than 30 days after the termination of appellate jurisdiction.

This court discussed a similar fact pattern in *In re Care & Treatment of Howard*, No. 108,552, 2014 WL 113428 (Kan. App.) (unpublished opinion), *rev. denied* 301 Kan. 1046 (2014). Howard filed a motion in 2012 alleging that the district court failed to hold annual review hearings as required by the SVPA in 2005, 2006, and 2007, and seeking immediate release. This court began its analysis by noting that Howard failed to file direct appeals challenging his continued commitment after each year's annual review and that fact alone may have been grounds for dismissal of Howard's petition because a 60-1501 petition should not be used as a substitute for direct appeal. 2014 WL 113428, at *3. Without deciding whether Howard's petition should have been dismissed for that reason, the court went on to consider the timing requirements of K.S.A. 2012 Supp. 60-1501 and found that Howard failed to timely file his petition. 2014 WL 113428, at *3. This court reasoned:

13

"In order for Howard's petition to be considered timely under K.S.A. 60-1501, he needed to file it within 1 year of the termination of appellate jurisdiction. But Howard did not appeal any of the annual reviews he received from 2005 to 2008; thus, appellate jurisdiction to review these proceedings expired when he failed to file a notice of appeal within 30 days from the determination that he remained a sexually violent predator. See K.S.A. 2012 Supp. 59-2401a(b); K.S.A. 2012 Supp. 60-2103." 2014 WL 113428, at *3.

But see K.S.A. 2012 Supp. 60-1501(c) (reducing the time limit to file a 60-1501 petition from 1 year to 30 days after an action is final). Additionally, the *Howard* court made note that, while the time limit to file may be extended by a showing of manifest injustice, Howard did not allege manifest injustice at the district court level or attempt to explain on appeal why he waited until years after the alleged due process violations to seek judicial review. 2014 WL 113428, at *4.

Like Howard, Griffin waited until after the statutory time for filing a 60-1501 petition ran before challenging the process, or, in this case, absence of process, that was used to continue his confinement. See K.S.A. 2015 Supp. 60-1501(c). Thus, Griffin's claims can only be considered if he has shown that he would suffer manifest injustice if denied relief.

*Griffin has failed to establish manifest injustice as to the first 5 years of his confinement sufficient to overcome the untimeliness of his petition.*

Manifest injustice has been interpreted to mean obviously unfair or shocking to the conscience. *Vontress v. State*, 299 Kan. 607, 614, 325 P.3d 114 (2014). When determining whether a movant has suffered manifest injustice, courts should look at the totality of the circumstances, giving special consideration to whether: (1) there are "persuasive reasons or circumstances" that prevented the movant from timely filing; and, (2) the movant's claim raises "substantial issues of law or fact deserving the district court's consideration." 299 Kan. at 616. Also, in the context of a 60-1507 motion, the

14

context in which this test was developed, courts are to consider whether the movant "set[] forth a colorable claim of actual innocence; *i.e.*, factual, not legal innocence." 299 Kan. at 616.

Griffin did not allege manifest injustice in his initial 60-1501 petition, but he did raise the issue before the district court in a memorandum replying to the State's answer. There, he argued that the district court's indifference to its statutory obligations of review and recommitment was shocking so that it was appropriate to allow an untimely petition. Additionally, Griffin argued that it would be unfair for the district court to reject his petition as untimely because he did not have the benefit of an attorney assisting him or advising him of timing restrictions on filing an action. Finally, Griffin alleged that he was never served with notice of the district court's orders recommitting him so he was unaware when the time periods for bringing an action began to run.

So to determine if Griffin has presented sufficient evidence to establish manifest injustice, we next review the factors outlined in *Vontress*.

Vontress *factor 1, justification for the delay, weighs against Griffin.*

The first *Vontress* factor is whether there are persuasive reasons justifying Griffin's delay in filing his 60-1501 petition. See 299 Kan. at 616. Griffin contends that one of the reasons for the delay is that he was never notified when the district court took action related to his continued confinement so he did not know when the time was ripe to file an appeal or a petition for writ of habeas corpus. If true, this lack of notice is disturbing. K.S.A. 2015 Supp. 60-258 requires the clerk of the district court in which a judgment or journal entry is entered to serve copies of the judgment on the attorneys of record within 3 days of filing; if a party is pro se, he or she should be served the notice directly. It appears from the record that Griffin was represented by counsel during years 4, 5, 6, and 7. He does not allege he was denied counsel in year 1, and in year 2 he

15

waived his right to further proceedings. It is unclear from the record whether he was represented in year 3, so at a minimum in year 3 notice should have been sent directly to him.

While the district court's failure to take action, including providing status updates, in each of these years seems like a reasonable justification for some delay in Griffin's filing of a 60-1501 petition, it is only a justification for *some* delay. See *White v. State*, No. 114,284, 2016 WL 3202889, at *4 (Kan. App. 2016) (unpublished opinion), *petition for rev. filed* June 21, 2016. There is an "outer limit as to how long [an SVP] reasonably might wait to hear from his or her lawyer [or the district court] about the status of" an annual review. 2016 WL 3202889, at *4. Beyond that point, it seems reasonable to hold the SVP responsible for making an inquiry into the status of his or her own fate. Since reviews are conducted yearly in accordance with the SVPA, 1 year seems to be the outer limit of a reasonable period for a committed individual to wait for the results of an annual hearing—beyond that a new annual review to recommit the individual will be complete, making the results of the previous review irrelevant. If the SVP has opted to represent himself or herself, it may be that the outer limit is shorter since he or she bears more responsibility for the litigation. See 2016 WL 3202889, at *3.

Here, Griffin was at least provided with yearly evaluations and he signed notices in each of the challenged years. Having signed the notice, Griffin was aware that proceedings were underway to continue his confinement. Armed with this knowledge, Griffin bore some responsibility for conducting an independent inquiry into the status of the proceedings if he was interested in challenging his recommitment. The failure of the district court to notify Griffin does not excuse Griffin's delay in filing a petition challenging his confinement in years 1, 3, 4, or 5.

Year 2 was slightly better in terms of the process that was afforded Griffin. In the second year, Griffin received an evaluation and signed a notice, both of which were filed

16

with the district court. The district court then entered an order recommitting Griffin to the program for another year. Nevertheless, Griffin was entitled to a hearing as part of his annual review which he never received. See *In re Burch*, 296 Kan. at 220.

Because an order was entered for this year, the issue of finality is clearer. The review process became final 30 days after the order recommitting Griffin was filed. *Howard*, 2014 WL 113428, at *3. The order was filed May 27, 2011, so it became final on June 26, 2011, and the time for filing a 60-1501 petition began to run. In order to be considered timely, a petition challenging the order should have been filed by July 26, 2011. Griffin provides no justification for the 4-year delay between the entry of the order recommitting him and his challenge to it.

In sum justification for the delay weighs against Griffin when conducting the *Vontress* analysis as to the first 5 years of his confinement.

> Vontress *factor 2, substantial issues of law or fact deserving the court's attention, weighs in Griffin's favor.*

The second factor is whether Griffin's claim raises substantial issues of law or fact deserving of the district court's attention. *Vontress*, 299 Kan. at 616. This factor asks the reviewing court to consider whether the petitioner's claim has merit without actually ruling on it. See *White*, 2016 WL 3202889, at *4. Griffin takes issue with the procedure, or lack thereof, which was used to continue his confinement in the SPTP—arguing that the district court completely failed to provide judicial review during his first, third, fourth, and fifth years in the program. In addition, Griffin takes issue with the procedure that was used to recommit him to a second year in the SPTP, specifically the district court's failure to provide a hearing before ordering recommitment.

Griffin's claim is clearly worthy of consideration. He raises legal questions regarding the district court's constitutional and statutory duties to provide judicial review of an SVP's progress and makes factual allegations that, if proved, could entitle him to relief, although we express no opinion regarding the viability or success of such claims. Thus, this second factor weighs in favor of untimely consideration of Griffin's claim.

Vontress *factor 3, evidence that continued confinement is no longer necessary, weighs against Griffin.*

The third factor that is considered in the context of determining whether a showing of manifest injustice saves an untimely 60-1507 motion is whether the movant made a colorable claim of actual innocence. *Vontress*, 299 Kan. at 616. While there is no direct corollary to a claim of actual innocence in the context of a 60-1501 petition raised by an SVP contesting his or her continued confinement, it is reasonable to require some showing that there has been a change in the petitioner's mental or physical health such that continued confinement is no longer necessary. See 299 Kan. at 610 (noting Judge Leben's conclusion that the reason for considering this factor is that "a [K.S.A. 60-1507] motion's merits could establish manifest injustice in some circumstances, *e.g.*, an inmate showing actual innocence"). Griffin makes no such argument. Rather than arguing that he was entitled to release because proper proceedings during the challenged years would have revealed that he was no longer a danger and is entitled to release on that basis, he argued that he is entitled to immediate release simply because his procedural rights were violated. In fact, after an independent evaluation in January 2016, Griffin indicated that he was no longer seeking transitional release. Moreover, the occurrence or nonoccurrence of annual reviews for Griffin created no prejudice upon his ability to challenge his continued confinement in subsequent annual reviews. Thus, this third factor also weighs against finding manifest injustice here.

18

Balancing these results, two out of the three *Vontress* factors clearly weigh against finding manifest injustice. Because Griffin has failed to adequately explain his long delay in challenging the district court's actions and because he makes no claim that release is necessary based on actual changes to his condition, he has failed to establish that manifest injustice results from a dismissal of his petition.

Since he failed to establish that manifest injustice would result from the district court's failure to consider his untimely filed petition for habeas corpus as it relates to his first, second, third, fourth, and fifth annual reviews, the district court properly denied Griffin relief.

*The district court did not err in finding that Griffin was not entitled to relief for year 6, even though that claim was timely.*

The review that Griffin received in his sixth year in the SPTP is identical to that received in his second: an evaluation of his mental state was made, Griffin was presented with a notice form which he refused to sign, the necessary documents were filed with the district court, and the district court entered an order recommitting Griffin for another year without first holding a hearing. Year 6 is unique, however, in that Griffin's petition for habeas corpus was filed just 29 days after the district court entered the order recommitting him, so it was timely.

Even though we have determined that Griffin's claim as to his sixth annual review is timely, we cannot ignore the fact that Griffin explicitly waived any hearing for his sixth annual review. On January 11, 2016, Griffin's appointed counsel informed the court that after receiving an independent evaluation, Griffin waived the right to seek transitional release. Based on Griffin's waiver and the findings of the 2014 (sixth) annual report and 2015 (seventh) annual report and the independent evaluation, the district court found that Griffin's condition had not so changed that he would be safe to be placed in transitional

19

release. This order was signed by both the State and Griffin's court-appointed attorney. Griffin does not address this waiver in his appellate brief, nor does he contend that court-appointed counsel was ineffective or acted without authority in waiving the district court's consideration of Griffin for transitional release. It was after this waiver that the district court summarily denied Griffin's petition. The court referred to this waiver in its order. Based on this explicit waiver, we agree with the district court finding that Griffin fails to state a claim for year 6 of his confinement.

*The district court did not err when it determined that Griffin failed to prove ineffective assistance of counsel.*

Griffin next argues that he was denied his right to effective assistance of counsel during each of his annual reviews.

Clearly, Griffin is entitled to effective assistance of counsel and he may challenge the effectiveness of counsel through a collateral attack using K.S.A. 2015 Supp. 60-1501. See *In re Care & Treatment of Ontiberos*, 295 Kan. 10, 27, 287 P.3d 855 (2012). To prevail on a claim of ineffective assistance of counsel, one entitled to counsel must establish (1) that the performance of defense counsel was deficient under the totality of the circumstances, and (2) prejudice, *i.e.*, that there is a reasonable probability the result would be different absent the deficient performance. A reasonable probability means a probability sufficient to undermine confidence in the outcome. See 295 Kan. at 31-32.

As discussed above, Griffin's collateral challenge is untimely for all but the sixth year. Moreover, even if we were to consider his challenge and assume counsel was ineffective in *all* of the claimed years, he is still required to show prejudice by demonstrating that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. Griffin has failed to proffer any evidence, for any of the challenged years, that the result would have been

20

different. In fact, he agreed that he was not eligible for transitional release for 2014 or 2015. Accordingly, the district court did not err in summarily denying his claim.

*Because the petition was summarily dismissed, the district court did not err when it refused to appoint counsel to assist Griffin.*

Finally, Griffin argues that the district court erred when it failed to appoint counsel to represent him in this matter. At the same time, Griffin recognizes that the right to counsel in a K.S.A. 2015 Supp. 60-1501 proceeding only attaches after the district court has determined that the petition cannot be summarily dismissed. Because the district court summarily dismissed Griffin's petition, it was unnecessary for it to appoint counsel to represent him. See *Merryfield v. State*, 44 Kan. App. 2d 817, 826, 241 P.3d 573 (2010).

In conclusion, we are deeply troubled by the general lack of attention by the district court to the periodic review component of due process for persons confined under the SVPA. We are also troubled by the difficulty of obtaining any meaningful remedy for such inaction under the traditional K.S.A. 2015 Supp. 60-1501 process. If an SVP obtains a proper hearing and the State is unable to show that the SVP's mental condition is such that it is not safe to release him or her, the ultimate relief afforded by the statute is placement in the transitional release program, not unconditional release. K.S.A. 2015 Supp. 59-29a08(d). If a hearing is not provided in 1 year, but provided the next year, our court has routinely found that the new hearing makes the failure to provide the prior hearing irrelevant or moot. See *In re Mellon*, No. 114,923, 2016 WL 5844593, *4 (Kan. App. 2016) (unpublished opinion).

Griffin's claim, at its core, is that he has been unlawfully confined since 2010 and he is entitled to unconditional release. But granting Griffin unconditional release, absent a finding that his mental abnormality or personality disorder has changed such that he is

21

safe to be placed in transitional release because he is unlikely to engage in acts of sexual violence, is clearly not the appropriate statutory or equitable remedy. This is particularly true in light of the fact that subsequent, unchallenged evaluations and court orders find he is not appropriate for transitional release. Release of a sexually violent person contravenes the purpose of the SVPA and the safety of the public.

Absent clarification by the legislature as to timing and procedure required for annual hearings (both the first and second hearings set out in K.S.A. 2015 Supp. 59-29a08[a] and [c]), we tend to agree with the Wisconsin Supreme Court that perhaps other means of challenging such inaction as experienced here are more appropriate. See *In re Commitment of Beyer*, 287 Wis. 2d 1, 33, 707 N.W.2d 509 (2006).When the delay in hearing is caused by the district court's failure to act, a more appropriate remedy may be under a writ of mandamus to compel the court to take immediate action. Such a remedy helps to ensure that an SVP "receives the process due to him while protecting the public from the discharge of dangerous persons and promoting effective treatment of sexually violent persons." 287 Wis. 2d at 33. In addition, KDADS, as the agency charged with enforcing the SVPA, also has responsibility to make sure the court has received and filed the annual reports the agency completes and sends to it. An attorney filing a document with the court makes sure that the court has received and file-stamped the document. We should expect no less from an agency of the State that is statutorily required to file important documents with the court that impose certain responsibility on the court for action. Both KDADS and the Attorney General's Office play an essential role in the process. Adequate case management tools need to be in place or risk the filing of mandamus actions or even actions for proper redress under 42 U.S.C. § 1983 (2016). The goal is to make sure the SVP receives all the process due him or her under our constitution and our statutes. Just as we have found an SVP should not be allowed to sit on his or her rights and then claim the deprivation of rights 6 years earlier, the court and KDADS should not be able to shirk their responsibilities by eventually providing a hearing that was due all along.

Affirmed.

* * *

ATCHESON, J., concurring:  I concur in the result affirming the dismissal of Matthew B. Griffin's petition for habeas corpus relief under K.S.A. 2015 Supp. 60-1501. Griffin has failed to show any legal basis for the relief he seeks—his release from treatment and detention as a sexually violent predator. See K.S.A. 2015 Supp. 59-29a01 *et seq.*