No. 120,184

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Care and Treatment of
RICHARD A. QUILLEN.

SYLLABUS BY THE COURT

1.

When analyzing jury instruction issues, an appellate court follows a three-step process. First, the court must determine whether it can or should review the issue, i.e., whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal. Second, it must consider the merits of the claim to determine whether legal or factual errors occurred below. And third, if there is error, it must assess whether the error requires reversal, i.e., whether the error can be deemed harmless.

2.

The Kansas Sexually Violent Predator Act, K.S.A. 2018 Supp. 59-29a01 et seq., authorizes the State to civilly commit sexually violent predators to the custody of the Kansas Department for Aging and Disability Services for treatment.

3.

To commit a person under the Kansas Sexually Violent Predator Act, K.S.A. 2018 Supp. 59-29a02(a), the State must prove beyond a reasonable doubt that (1) the person has been convicted of or charged with a sexually violent offense, (2) the person suffers from a mental abnormality or personality disorder, (3) that mental abnormality or personality disorder makes the person likely to commit repeat acts of sexual violence, and (4) the person has serious difficulty controlling their dangerous behavior.

1

4.

When a person is civilly committed under the Kansas Sexually Violent Predator Act, K.S.A. 2018 Supp. 59-29a08 entitles such person to an annual review to determine whether his or her mental abnormality or personality disorder has so changed as to render them safe to be at large. The committed person can also use the annual review process to seek transitional release out of the treatment program by filing a petition for transitional release.

5.

Upon filing a petition for transitional release, the committed person has the burden under K.S.A. 2018 Supp. 59-29a08(d) to show probable cause to believe that the person's mental abnormality or personality disorder has significantly changed so that he or she is safe to be placed in transitional release.

6.

If the committed person establishes probable cause, the court must conduct a hearing on the petition for transitional release. Under K.S.A. 2018 Supp. 59-29a08(g), the burden of proof at this hearing is on the State to prove beyond a reasonable doubt that the committed person's mental abnormality or personality disorder remains such that the person is not safe to be placed in transitional release and if transitionally released is likely to engage in repeat acts of sexual violence.

7.

Due process requires annual review proceedings to utilize the same standard of proof as used in the original commitment proceedings. As such, to deny a committed person release, the State is also constitutionally required to prove beyond a reasonable doubt that the person would have serious difficulty controlling his or her behavior if transitionally released.

Appeal from Johnson District Court; KEVIN P. MORIARTY, judge. Opinion filed October 18, 2019. Vacated and remanded with directions.

*Michael J. Bartee*, of Michael J. Bartee, P.A., of Olathe, for appellant.

*Dwight R. Carswell*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., STANDRIDGE, J., and MCANANY, S.J.

STANDRIDGE, J.: In 2006, Richard A. Quillen was civilly committed to the custody of the Kansas Secretary of Social and Rehabilitation Services, now the Kansas Department for Aging and Disability Services (KDADS), under the Kansas Sexually Violent Predator Act (KSVPA). As part of that commitment, KDADS is required to conduct a yearly review and report to the district court regarding Quillen's progress, the current state of his mental condition, and his treatment staff's recommendation regarding transitional release. In 2013, Quillen challenged KDADS's recommendation that he remain civilly committed and requested a jury trial to determine if he should be placed into transitional release. Quillen's request was eventually granted, and a jury trial was held in April 2018. But the jury found the State met its burden to prove beyond a reasonable doubt that Quillen did not meet the criteria for transitional release. Quillen filed a motion for a new trial, claiming the district court violated his right to due process when it refused to give a jury instruction that included "serious difficulty controlling behavior" as a separate element the State must prove in order for the jury to find he did not meet the criteria for transitional release. The district court denied the motion, and Quillen appeals. For the reasons stated below, we vacate the jury's verdict and remand the matter for a new trial, with directions to instruct the jury that, in addition to the other elements, the State must prove beyond a reasonable doubt that Quillen would have serious difficulty controlling behavior if transitionally released.

FACTS

In 1998, Quillen was convicted of one count of aggravated indecent solicitation of a child and one count of lewd and lascivious behavior. He was sentenced to 43 months in prison. Prior to his release, the State filed a petition—pursuant to K.S.A. 59-29a01—to determine whether Quillen qualified as a sexually violent predator subject to involuntary civil commitment upon release. Quillen initially contested the petition but later agreed to enter a consent decree, in which he stipulated to the fact that he was a sexually violent predator within the meaning of K.S.A. 59-29a01 et seq. As part of this consent decree, the State agreed that if Quillen ever decided to file a petition for transitional release under K.S.A. 2018 Supp. 59-29a08, the State would waive the requirement that Quillen first have a probable cause hearing. The district court acknowledged Quillen's stipulation and the terms of the consent decree and then entered judgment accordingly. Based on that judgment, the court committed Quillen to the custody of KDADS and sent him to the Larned State Security Hospital Sexual Predator Treatment Facility for treatment (Program).

Once committed, KDADS conducted its yearly review of Quillen as required and, in each of these years, submitted a report advising the district court that Quillen's mental condition or personality disorder had not changed sufficiently to qualify him for transitional release. As required, KDADS provided Quillen with a copy of the report and notice that he had the right to petition for release over the Secretary's objection. While Quillen acknowledged receipt of the annual report each year, he did not challenge the findings or recommendations. That changed in 2013, however, when Quillen requested a hearing to determine whether he should be placed into transitional release over KDADS's objection. The district court summarily denied the request without setting a hearing. Quillen appealed. *In re Care and Treatment of Quillen*, No. 114,708, 2016 WL 7324416, at *1 (Kan. App. 2016) (unpublished opinion).

4

On appeal, Quillen moved for summary disposition. For its part, the State suggested that Quillen's motion for summary disposition be construed as a motion for remand and "'that on remand, [Quillen] be given a hearing pursuant to K.S.A. 59-29a08, with all attendant rights, including the right to request a jury, the right to counsel, and the right to an independent examination.'" *Quillen*, 2016 WL 7324416, at *1. The motions panel of this court adopted the State's suggestion and issued an order summarily reversing and remanding the case for a hearing pursuant to K.S.A. 59-29a08. In the order, the panel specifically acknowledged the fact that, in the original consent decree, the State waived the requirement that Quillen first have a probable cause hearing; therefore, the court remanded the case for a hearing on transitional release, noting that Quillen had the right to request a jury. 2016 WL 7324416, at *1.

On remand, Quillen was appointed counsel and received an independent evaluation from Dr. Robert Barnett. Before a trial could take place, however, another annual review and report was issued and, like the 2013 report, it too recommended that Quillen remain in the Program and not be placed into transitional release. Quillen challenged that report as well, and the cases were consolidated into one jury trial that was set for July 20, 2015. *Quillen*, 2016 WL 7324416, at *1-2.

On July 1, 2015, Senate Bill 12 went into effect and made significant changes to K.S.A. 59-29a08. *Quillen*, 2016 WL 7324416, at *2; L. 2015, ch. 95; K.S.A. 2015 Supp. 59-29a08. Two weeks later, at a pretrial conference in Quillen's case, the State argued the changes made to the statute by Senate Bill 12 meant Quillen no longer was permitted to have a jury consider his petition for transitional release and, therefore, the case should be tried to the bench. The district court agreed, denied Quillen's request for a jury trial, and conducted a bench trial. At the close of trial, the court took the matter under advisement. A few months later, the court issued a written decision finding that Quillen's "'mental abnormality and/or personality disorder remains such that he is not safe to be placed in transitional release, and that if [Quillen] was placed in transitional release, he would be

5

likely to engage in acts of sexual violence.'" 2016 WL 7324416, at *2. The court denied Quillen's petition for transitional release and ordered Quillen to remain in the Program. 2016 WL 7324416, at *2.

Quillen appealed, arguing, among other things, that he was entitled to a jury trial and that the district court erred when it found that the amendments to K.S.A. 59-29a08 made by Senate Bill 12 applied retroactively. *Quillen*, 2016 WL 7324416, at *1-2. A panel of this court agreed and remanded Quillen's case to the district court so that a jury trial could be held. 2016 WL 7324416, at *2-6. But before the second trial could be conducted, Quillen suffered a stroke that (1) made it difficult for him to express himself and get words out and (2) partially paralyzed his right side, which hindered his mobility and—because he is right handed—his ability to write.

On December 5, 2017, Quillen filed a motion to be discharged from the Program under K.S.A. 59-29a25, arguing that the physiological changes caused by the stroke were permanent and rendered him unable to commit a sexually violent offense. Following a hearing, the district court found Quillen had failed to present clear and convincing evidence to establish that his physical condition rendered him unable to commit a sexually violent offense. Therefore, the court denied the motion.

On April 16, 2018, Quillen's case proceeded to a jury trial. Quillen appeared by video conference and participated as best as he could, given his physical limitations, and mostly responded with "yes" or "no" answers. After the case was submitted, the district court held a jury instructions conference and proposed the following instructions:

"JURY INSTRUCTION NO. 2
"In this trial, the State has the burden to prove beyond a reasonable doubt that [Quillen's] mental abnormality or personality disorder remains such that he is not safe to

6

be placed in transitional released [*sic*] and if transitionally released is likely to engage in repeat acts of sexual violence.

"[Quillen] is not required to disprove the State's claim. The test you must use is this: If you have a reasonable doubt about the truth of any of the required elements that the State must prove, you must find that [Quillen] is safe to be placed in transitional release. If you have no reasonable doubt about the truth of any of the required elements that the State must prove, you should find that [Quillen] is not safe to be placed in transitional release, and should remain in secure commitment.

"JURY INSTRUCTION NO. 3

"[Quillen] is civilly committed to Larned State Security Hospital with the diagnoses of mental abnormalities and personality disorders including Pedophilic Disorder, Attracted to Females, Nonexclusive Type; Other Specified Personality Disorder with Borderline and Antisocial features.

"The State alleges [Quillen] is not safe to be placed in transitional release. [Quillen] believes he is eligible for transitional release.

"To deny his transitional release, the State must prove the following:

"1. [Quillen's] mental abnormality or personality disorder remains such that he is not safe to be placed in transitional release.

"2. If transitionally released, he is likely to engage in acts of sexual violence."

Quillen objected to these instructions. Specifically, Quillen requested each instruction include additional language requiring the State to prove, as an additional element, "that his mental abnormality or personality disorder makes it seriously difficult for him to control his dangerous behavior." Quillen argued that the additional language was necessary to satisfy due process concerns and to comply with the United States Supreme Court's decisions in *Kansas v. Hendricks*, 521 U.S. 346, 117 S. Ct. 2072, 138 L. Ed. 2d 501 (1997), and *Kansas v. Crane*, 534 U.S. 407, 122 S. Ct. 867, 151 L. Ed. 2d 856 (2002). The district court rejected Quillen's arguments and gave Instructions 2 and 3 as proposed.

7

After deliberating, the jury found the State met its burden to prove that Quillen's mental abnormality or personality disorder remains such that he is not safe to be placed in transitional release and, if transitionally released, Quillen is likely to engage in repeat acts of sexual violence. The district court accepted the jury's verdict and ordered Quillen to remain committed. Quillen filed a motion for a new trial in which, among other things, he reasserted his arguments regarding the jury instructions. But the district court remained unconvinced and denied the motion. Quillen timely appeals.

ANALYSIS

Quillen argues the district court deprived him of his right to due process by overruling his objection and giving Instructions 2 and 3 as proposed by the court, without adding language that would require the State to prove Quillen's "mental abnormality or personality disorder makes it seriously difficult for him to control his dangerous behavior." When analyzing jury instruction issues, appellate courts follow a three-step process:

> "'(1) determining whether the appellate court can or should review the issue, *i.e.*, whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal; (2) considering the merits of the claim to determine whether error occurred below; and (3) assessing whether the error requires reversal, *i.e.*, whether the error can be deemed harmless.' [Citation omitted.]" *State v. McLinn*, 307 Kan. 307, 317, 409 P.3d 1 (2018).

Here, there is no dispute that this court has jurisdiction over this case and that Quillen properly preserved this issue for appellate review. As such, we move directly to the second step of the analysis and consider the merits of Quillen's claim that the instructions, as given, constituted legal error. *McLinn*, 307 Kan. at 317. Where, as here, the gravamen of a party's complaint concerns a constitutional due process challenge, an appellate court exercises unlimited review. *State v. Wade*, 284 Kan. 527, 534, 161 P.3d 704 (2007).

*Error*

The issue presented here is whether the elements required to prove a committed person is not safe to be placed in transitional release under K.S.A. 2018 Supp. 59-29a08(c) must be the same as those required to initially commit the person under K.S.A. 2018 Supp. 59-29a02(a) in the first place.

We begin by setting forth the elements that the State is required to prove at an initial commitment hearing under the KSVPA. Before it was amended in 2018, the KSVPA required the State to prove three elements when seeking to civilly commit a person as a sexually violent predator:  (1) The respondent has been convicted of or charged with a sexually violent offense, (2) the respondent suffers from a mental abnormality or personality disorder, and (3) the mental abnormality or personality disorder makes the respondent likely to commit repeat acts of sexual violence. See K.S.A. 2018 Supp. 59-29a02(a) (defining "sexually violent predator" as "any person who has been convicted of or charged with a sexually violent offense and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in repeat acts of sexual violence"). The State must prove these elements beyond a reasonable doubt. See K.S.A. 2018 Supp. 59-29a07(a).

Although not reflected in the statute before it was amended in 2018, a fourth element of proof was imposed by the United States Supreme Court in 2002 when it issued its opinion in *Kansas v. Crane*, 534 U.S. 407. In *Crane*, the Court clarified that a person's inability to control dangerous behavior is an element that must be proved in order for a civil commitment under the KSVPA to be constitutional:  "[T]here must be proof of serious difficulty in controlling behavior." 534 U.S. at 413. Relying on *Crane*, our Kansas Supreme Court also added this fourth element to its classification test for sexually violent predators in 2011 when it issued its opinion in *In re Care & Treatment of Williams*, 292 Kan. 96, 106, 253 P.3d 327 (2011). In 2018, the Legislature amended the

9

statute to expressly define the term "sexually violent predator" to include this fourth element. See K.S.A. 2018 Supp. 59-29a02(a) ("'Sexually violent predator' means any person who has been convicted of or charged with a sexually violent offense and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in repeat acts of sexual violence *and who has serious difficulty in controlling such person's dangerous behavior*. [Emphasis added.]).

If, at the initial commitment hearing, the State proves beyond a reasonable doubt that a person is a sexually violent predator under Kansas law, the person is committed "until such time as the person's mental abnormality or personality disorder has so changed that the person is safe to be at large." K.S.A. 2018 Supp. 59-29a07(a). But the KSVPA specifically provides for annual reviews to reexamine the mental condition of the confined person, a process that also may be used to seek transitional release from the program. K.S.A. 2018 Supp. 59-29a08. The recommendation of the examiner is memorialized in an annual report. The Secretary must forward the annual report to the district court that committed the individual, along with a notice containing a waiver of rights. K.S.A. 2018 Supp. 59-29a08(a). The notice ensures the committed person is aware of his or her right to petition the district court for release from the program even if the Secretary suggests recommitment based on the results of the annual evaluation. *Griffin v. Bruffett*, 53 Kan. App. 2d 589, 594-95, 389 P.3d 992 (2017).

After the district court receives the evaluation and notice, it must conduct an annual review hearing. 53 Kan. App. 2d at 595. Under the applicable statute, the committed person has the burden to show probable cause to believe that person's mental abnormality or personality disorder has significantly changed so that he or she is safe to be placed in transitional release. K.S.A. 2018 Supp. 59-29a08(d). If the committed person establishes probable cause, the court must conduct a hearing on the petition for transitional release. K.S.A. 2018 Supp. 59-29a08(g).

10

In this case, however, the transitional release process is governed by the consent decree signed by the parties in 2006. In the consent decree, the State waived the requirement that Quillen first show probable cause before being entitled to a hearing on transitional release. And the court signed off on the consent decree at the time it was entered. Consistent with the consent decree, the court did not hold a probable cause hearing.

Notably, the burden of proof at a hearing for transitional release is not on the committed person, but instead is on the State "to prove beyond a reasonable doubt that the committed person's mental abnormality or personality disorder remains such that the person is not safe to be placed in transitional release and if transitionally released is likely to engage in repeat acts of sexual violence." K.S.A. 2018 Supp. 59-29a08(g).

Unlike K.S.A. 2018 Supp. 59-29a02(a), the Legislature did not amend the statutory elements in K.S.A. 2018 Supp. 59-29a08(g) to include a requirement that, if transitionally released, the committed person would have serious difficulty in controlling such person's dangerous behavior. Nevertheless, Quillen argues the United States Supreme Court's decisions in *Crane* and *Hendricks*, as applied by our Supreme Court in *Williams*, constitutionally require the State to prove that he would have serious difficulty controlling his behavior if transitionally released. Quillen's argument is not without merit.

Relevant here, the issue for decision before the United States Supreme Court in *Hendricks* was whether the statutory condition of "mental abnormality" satisfied the substantive due process requirement that involuntary civil commitment must be based on the finding of the presence of a mental illness. 521 U.S. at 350. The Court described the operation of the Kansas law as follows:

> "Once an individual was confined, the Act required that '[t]he involuntary
> detention or commitment . . . shall conform to constitutional requirements for care and

11

treatment.' § 59-29a09. Confined persons were afforded three different avenues of review: First, the committing court was obligated to conduct an annual review to determine whether continued detention was warranted. § 59-29a08. Second, the Secretary was permitted, at any time, to decide that the confined individual's condition had so changed that release was appropriate, and could then authorize the person to petition for release. § 59-29a10. Finally, even without the Secretary's permission, the confined person could at any time file a release petition. § 59-29a11. *If the court found that the State could no longer satisfy its burden under the initial commitment standard, the individual would be freed from confinement.*" (Emphasis added.) 521 U.S. at 353.

The *Hendricks* Court ultimately concluded that the statutory definition of mental abnormality in the Act conformed to the substantive requirements of the Due Process Clause. 521 U.S. at 356. In so doing, the Court cited to the statutory definition of mental abnormality, which includes a requirement that sexually violent predators "suffer from a volitional impairment rendering them dangerous beyond their control." 521 U.S. at 358. The "lack of volitional control, coupled with a prediction of future dangerousness, adequately distinguishes Hendricks from other dangerous persons who are perhaps more properly dealt with exclusively through criminal proceedings." 521 U.S. at 360. Later in the opinion, the *Hendricks* Court observed that the criteria for commitment and continued commitment in the Kansas statutory scheme are the same:

"Furthermore, commitment under the Act is only potentially indefinite. The maximum amount of time an individual can be incapacitated pursuant to a single judicial proceeding is one year. § 59-29a08. *If Kansas seeks to continue the detention beyond that year, a court must once again determine beyond a reasonable doubt that the detainee satisfies the same standards as required for the initial confinement.* This requirement again demonstrates that Kansas does not intend an individual committed pursuant to the Act to remain confined any longer than he suffers from a mental abnormality rendering him unable to control his dangerousness. [Citation omitted.]" (Emphasis added.) 521 U.S. at 364.

In finding the commitment law constitutional, it appears the United States Supreme Court interpreted the Act to require that, in order to continue one's commitment, the same standards must be met as those at the original commitment. In other words, the Act should not continue to detain those who no longer meet the standard for commitment.

Five years after *Hendricks*, the United States Supreme Court issued its opinion in *Kansas v. Crane*, 534 U.S. 407 (2002). In *Crane*, the Court held that the Act's initial commitment standard requires the State to prove beyond a reasonable doubt that the respondent has serious difficulty controlling his or her behavior. See *Crane*, 534 U.S. at 413. Since *Crane*, Kansas has recognized the need for a jury instruction at commitment trials on the element of serious difficulty controlling behavior. As noted earlier, the Legislature recently amended the statute to require the State to prove the respondent has serious difficulty controlling his or her behavior, presumably to comply with the constitutional mandate in *Crane*. Considering the holdings in *Hendricks* and *Crane* together, we find due process requires the fact-finder—at both the initial commitment proceeding and the annual review proceedings—to conclude beyond a reasonable doubt that the respondent has serious difficulty controlling his or her behavior.

By contrast, the State argues that the *Hendricks* decision was made in the context of an initial commitment proceeding and therefore any comments about the annual review proceedings are, at best, dicta and not binding on this case. A panel of this court recently lent credence to this argument when it noted that the assessment made at the initial commitment proceedings and the assessment made at the transitional release proceedings were two different assessments—one related to whether a person is a sexually violent predator and the other whether a person is safe for transitional release— and therefore are governed by two different standards. *In re Care and Treatment of Burch*, No. 116,600, 2017 WL 3947430, at *5 (Kan. App. 2017) (unpublished opinion), *rev. denied* 307 Kan. 987 (2018). But the *Burch* court cited to the two different statutes only in passing, and the court failed to expound on the issue or otherwise identify any

13

difference in the standard of proof required to prove a person is a sexually violent predator and the standard of proof required to prove a person is not safe for transitional release. Moreover, the *Burch* court was not presented with the constitutional due process claim presented by Quillen.

Although we find the passing comments in *Burch* to be dicta, we readily acknowledge that the State's argument is grounded in the fact that the *Hendricks* decision was made in the context of an initial commitment proceeding. And if we were writing on a blank slate, the State's argument would be worth exploring. But our slate is not blank. This court is required to follow United States and Kansas Supreme Court precedent absent some indication of a departure from an earlier position. *State v. Belone*, 51 Kan. App. 2d 179, 211, 343 P.3d 128 (2015). In finding it constitutional, the *Hendricks* Court interpreted the Act to require courts to utilize the same standard of proof for annual KSVPA review proceedings that it utilizes in original commitment proceedings. 521 U.S. at 353, 364. And *Crane* expressly states that the initial commitment standard of proof requires the State to prove beyond a reasonable doubt that a respondent has serious difficulty controlling his or her behavior. 534 U.S. at 413. Based on *Crane*, our Kansas Supreme Court added the "difficulty controlling behavior" requirement as an essential element to the classification test for sexually violent predators. *In re Care & Treatment of Williams*, 292 Kan. at 106. Based on this line of cases, we conclude as a matter of law that the State was constitutionally required to prove beyond a reasonable doubt that Quillen would have serious difficulty controlling his behavior if transitionally released. For this reason, we find the district court erred in denying Quillen's request to add that essential element to Instruction 2 and Instruction 3.

*Harmlessness*

Because we have found the district court erred by denying Quillen's request for jury instructions that required the State to prove he would have serious difficulty

14

controlling behavior if transitionally released, we now must determine whether that error requires reversal, i.e., whether it can be deemed harmless. See *McLinn*, 307 Kan. at 317. When an error infringes upon a party's federal constitutional rights, a court will declare a constitutional error harmless only when the party benefiting from the error persuades the court "beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, i.e., proves there is no reasonable possibility that the error affected the verdict." *State v. Ward*, 292 Kan. 541, 569, 256 P.3d 801 (2011) (citing *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 [1967]).

Here, the State argues that even if the failure to give Quillen's requested instructions constituted error, the error was harmless because the jury's finding on the first element in the instruction that was given—that Quillen's mental abnormality or personality disorder remains such that he is not safe to be placed in transitional release—necessarily denotes a finding by the jury that Quillen has a serious difficulty controlling his behavior. But the State's argument is a logical fallacy. Instructions 2 and 3 cannot be erroneous because they *do not* implicitly include a finding that the person has a serious difficulty controlling his or her behavior while, at the same time, be harmless because they implicitly and necessarily include a serious difficulty controlling behavior finding. We find the State's argument to be without merit.

In a separate argument, the State notes that Quillen was diagnosed with pedophilia, which the *Crane* Court characterized as "a mental abnormality that critically involves what a lay person might describe as a lack of control." 534 U.S. at 414. Relying on this characterization, the State argues that in finding Quillen was not safe to be placed into transitional release, the jury necessarily must have believed that he has serious difficulty controlling his dangerous behavior (i.e., his pedophilia). But the cited passage from *Crane* was referring to *Hendricks*, where the person subject to commitment proceedings specifically admitted that he could not control his urge to molest children.

15

See *Crane*, 534 U.S. at 414; *Hendricks*, 521 U.S. at 355. Quillen made no such admission in this case. We find nothing in the record from which we can conclude that the jury's decision finding Quillen was not safe for transitional release is somehow equivalent to a finding that Quillen has serious difficulty controlling his behavior. This is particularly true where, as here, the jury was not asked to consider that question and there was competing expert testimony on the issue.

As the party benefitting from the error, we find the State has failed to bear its burden to persuade us beyond a reasonable doubt that the error complained of did not affect the outcome of the trial in light of the entire record. See *Ward*, 292 Kan. at 569. For this reason, we vacate the jury's verdict and remand the matter for a new trial, with directions to instruct the jury that, in addition to the other elements, the State must prove beyond a reasonable doubt that Quillen would have serious difficulty controlling behavior if transitionally released.

Vacated and remanded with directions.