NOT DESIGNATED FOR PUBLICATION

No. 123,949

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

IN THE MATTER OF THE CARE AND TREATMENT OF
DUSTIN J. MERRYFIELD.

MEMORANDUM OPINION

Appeal from McPherson District Court; JOHN E. SANDERS, judge. Opinion filed October 7, 2022.
Affirmed.

*Dustin J. Merryfield*, appellant pro se.

*Kurtis Wiard*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., HILL and ISHERWOOD, JJ.

PER CURIAM:  Dustin J. Merryfield has a long and varied history with our court. In this most recent chapter, he mainly challenges the district court's denial of his petition to be returned to transitional release under the Kansas Sexually Violent Predator Act (KSVPA), K.S.A. 2021 Supp. 59-29a01 et seq. but also takes issue with various other rulings entered by the district court. He contends he endured equal protection and procedural due process violations, the district court acted outside the scope of its jurisdiction, the KSVPA is constitutionally infirm, and counsel rendered deficient representation. While our resolution is varied in that we find Merryfield is not entitled to relief on the merits of his claim that he should be returned to transitional release and that he waived or failed to properly preserve other claims, overall, we detect no errors. The decision of the district court is affirmed.

1

In 2000, Dustin J. Merryfield was classified as a sexually violent predator and committed to the Sexual Predator Treatment Program (SPTP). Under that program an individual must progress through three separate tiers of inpatient services, followed by two levels of supervised treatment—transitional release followed by conditional release—before becoming eligible to petition for final release. See K.S.A. 2021 Supp. 59-29a02(i),(k).

In early June 2018, Merryfield was approved to advance to the third tier of the SPTP which contemplates preparation for transitional release as part of its rubric. Achievement of that status enabled Merryfield to relocate from Larned State Hospital (LSH) to Maple House, a reintegration facility on the grounds of Parsons State Hospital. Patients in the separate transitional release phase of the program also reside at Maple House. Together with the regular tier three treatment protocol, patients in the reintegration program are also required to "maintain responsible behavior and communication with staff at the reintegration facility . . . and demonstrate a satisfactory degree of transparency in [his or her] lifestyle."

In December 2018, the Secretary of the Kansas Department for Aging and Disability Services (KDADS) filed with the district court its annual report and "Annual Notice of Right to Petition for Release From Treatment Over the Secretary's Objection" as required by K.S.A. 2018 Supp. 59-29a08, concerning Merryfield. Included within that filing was a signed acknowledgment by Merryfield that he received the notice, but not that he waived the right to pursue further proceedings. Yet Merryfield never filed a request for a hearing.

Roughly one year into the program at Maple House, a staff member reported that Merryfield made sexually inappropriate remarks to her. Specifically, Merryfield

complimented her on her physical appearance, asked if she was planning to party and play over the weekend in a manner that insinuated sexual activity, wanted to know whether her morals were like that of the girls in a television program about underage pregnancy, and asked whether she ever had to consider using the morning after pill. Consequently, the Progress Review Panel (PRP) demoted Merryfield to the first tier of the SPTP and transferred him back to LSH.

In December 2019, KDADS filed its 2019 annual report and Notice related to Merryfield which was again accompanied by a signed acknowledgment of receipt from Merryfield. At the end of that month, assisted by appointed counsel, Merryfield filed a "Request for a Hearing and Order to Put Respondent Back in Transitional Release." In the motion, Merryfield asserted that his placement at Maple House fell within the reach of the statutory definition of transitional release, so he could only be demoted and returned to secure confinement at LSH by court order following a hearing.

The State filed a response objecting to Merryfield's motion and explained that Merryfield misstated both the fact that he was previously ordered to transitional release, as well as the legal procedure governing such release. Thus, Merryfield was asking the court to act in a manner that exceeded both its statutory authority and jurisdiction.

In January 2020, Merryfield filed a pro se request for a hearing on his 2019 annual report along with an affidavit detailing his progress in the SPTP. In the affidavit, Merryfield acknowledged that a staff member reported him for making inappropriate comments yet claimed no personal recollection of their occurrence. However, he also stated that to the extent the remarks were made he was remorseful. Despite his alleged absence of any recollection, Merryfield also took the position that the staff member bore culpability for initiating the sexually charged exchange and that he reported as much upon his return to LSH. He submitted a follow up affidavit a few weeks later and claimed

a polygraph test showed the veracity of his assertion that he did not engage in the inappropriate conversations.

On September 29, 2020, the district court issued several orders addressing various aspects of Merryfield's case. First, it summarily denied Merryfield's request to return to transitional release. The court explained:

"The record reflects that Merryfield has never been placed in transitional release by the court. He had been transferred from Larned to Parsons in June 2019, as part of treatment protocols *in preparation* of his transfer to transitional release. This transfer has apparently caused the confusion here. The court, and *only* the court can authorize transitional release, either with or without the Secretary of KDADS approval. See K.S.A. 59-29a08(h) and K.S.A. 59-29a10. That has never happened in this case.

"The record further reflects that, while at the Parsons facility, around August 8, 2019, Merryfield engaged in inappropriate sexual conversation with staff. The treatment personnel deemed such behavior a significant indicator of relapse and he was returned to secure confinement at Larned. He also received a reduction of tier status. In parallel to Merryfield's motion here, he has appealed through the grievance process, the staff's decision to return him to secure confinement (but not the fact that he did anything wrong). The record shows that his appeal proceedings which go through the Office of Administrative Hearing have not been fully completed, thus his administrative remedies are not exhausted. However, reduction in *tier* status is a different issue from *placement* status. This court will not interfere with his treatment providers' judgment in regard to his placement in secure status as opposed to preliminary protocols involving integration and preparation for transitional release at such time as it may be ordered by the court.

"Never having been lawfully placed in transitional release by the court in the first place, the court has no authority to return respondent to such placement. Merryfield's motion is DENIED."

Likewise, the district court issued an order finding that Merryfield waived the opportunity to request a review hearing on his 2018 annual report because he failed to

timely request a hearing within 45 days of receiving the report as required by K.S.A. 2018 Supp. 59-29a08(b).

In January 2021, the district court issued another order relating to both the 2018 and 2019 annual reports. First, the court reiterated that Merryfield's failure to timely request a hearing to address his 2018 annual report resulted in a waiver of that right and therefore any challenges related to that report were moot. The court also noted that it conducted an in-camera review of the 2018 annual examination and concluded Merryfield's condition had not improved such that it was safe to elevate him to transitional release status. The court further found that information in his 2019 annual report reaffirmed that transitional release was not an appropriate placement given that he was returned to secure confinement during his 2019 annual review cycle.

On February 8, 2021, Merryfield filed several pro se motions including:

- A "Notice of Prison Mailbox Rule," asserting that he timely submitted a request for a hearing within 45 days of receiving the 2019 annual report.
- A "Request for Hearing," seeking "the Due Process for which he is entitled" and an annual review hearing, purportedly related to his 2020 annual report but also addressing his previous years' reports.
- A "Motion for Change of Assigned Legal Counsel," requesting appointment of new legal counsel because his current attorney neglected to ensure that his rights were protected and failed to communicate with Merryfield since January 2020.

The next day, the district court appointed substitute counsel for Merryfield but roughly one month later, Merryfield moved the court to remove that individual and appoint yet another new attorney. In support of his request, Merryfield asserted he had only recently learned of new counsel's appointment and to date had yet to share in any

communication with her. Thus, he either wanted to go forward pro se or with another attorney.

Merryfield also filed a pro se motion for leave to file notice of appeal out of time, asserting that Kansas Supreme Court Order 2020-PR-058, effective May 27, 2020, suspended all statutory deadlines and alternatively that neither of his prior appointed attorneys informed him about the district court's orders issued on September 29, 2020, or January 22, 2021. The attached notice of appeal focused on two rulings: (1) the September 29, 2020 "Order Denying Request to be Returned to Transitional Release"; and (2) the January 22, 2021 "Journal Entry of Annual Review 2019." About three weeks later, Merryfield filed a second pro se notice of appeal stating his intention to appeal the district court's September 29, 2020 "Order Regarding 2018 Annual Examination."

Merryfield essentially now presents ten issues for our consideration. Yet many of his arguments are interrelated and, as such, may be consolidated for resolution.

### THE DISTRICT COURT PROPERLY EXERCISED JURISDICTION OVER MERRYFIELD'S ANNUAL REVIEW HEARINGS

Within this issue, Merryfield raises jurisdictionally based challenges to the district court's exercise of authority over his 2018 and 2019 annual review hearings. First, he argues that K.S.A. 60-211(a) requires that all his annual reports be stricken because they were filed without the Attorney General's signature and the notice of rights and waiver forms were neither reviewed nor signed by Merryfield's attorney. Next, he essentially contends the district court's inaction or failure to conduct an in-camera review of his 2018 annual report subsequently deprived it of jurisdiction over his 2019 annual review.

Whether jurisdiction exists is a question of law over which this court's scope of review is unlimited. *Via Christi Hospitals Wichita v. Kan-Pak*, 310 Kan. 883, 889, 451

6

P.3d 459 (2019). Likewise, when an issue requires interpretation of a statute, it also presents a question of law subject to unlimited review. *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019).

The annual review process required by the KSVPA is outlined in K.S.A. 2021

"Each person committed under the Kansas sexually violent predator act shall have a current examination of the person's mental condition made once every year. The secretary shall provide the person with an annual written notice of the person's right to petition the court for release over the secretary's objection. The notice shall contain a waiver of rights. The secretary shall also forward the annual report, as well as the annual notice and waiver form, to the court that committed the person under the Kansas sexually violent predator act. The court shall file the notice and the report upon receipt and forward the file-stamped copy to the attorney general. The attorney general shall forward a file-stamped copy of the annual written notice and annual report to the secretary upon receipt." K.S.A. 2021 Supp. 59-29a08(a).

Once those steps are satisfied, one of two things must occur. First, the committed individual can request an annual review hearing within 45 days after the court files the annual written notice. K.S.A. 2021 Supp. 59-29a08(b). When such a request is made and a hearing occurs, the individual bears the burden of showing probable cause to believe that their mental condition has transformed such that they are safe to be placed in transitional release. K.S.A. 2021 Supp. 59-29a08(d). The statute allows the person to have an attorney represent them at the probable cause hearing, but it does not entitle them to be personally present. K.S.A. 2021 Supp. 59-29a08(e).

The person may also opt to not request a hearing. In those situations, "the court that committed the person . . . shall then conduct an in camera annual review of the status of the person's mental condition and determine whether the person's mental abnormality or personality disorder has significantly changed so that an annual review hearing is

warranted. The court shall enter an order reflecting its determination." K.S.A. 2021 Supp. 59-29a08(f).

If, after either the initial hearing or an in-camera review, the district court determines that probable cause of improvement exists, the court must set an evidentiary hearing for transitional release. For purposes of that hearing, the burden then shifts to the State to establish beyond a reasonable doubt that due to the person's mental condition, transitional release is not an appropriate placement and, if such modification were to occur, the individual is likely to engage in acts of sexual violence. K.S.A. 2021 Supp. 59-29a08(g).

### a. K.S.A. 60-211(a) does not apply to the filing of annual reports under K.S.A. 2021 Supp. 59-29a08(a).

In laying the foundation for the first of his jurisdictional challenges, Merryfield highlights K.S.A. 2021 Supp. 60-211(a) which states that "[e]very pleading, written motion and other paper must be signed by at least one attorney of record." He then contends that K.S.A. 2021 Supp. 59-29a08(a) contravenes this provision because (1) the annual reports are not signed by the Attorney General, who represents the state; and (2) the notice of rights and waiver forms were not presented to or signed by Merryfield's attorney. Therefore, the district court had the obligation to strike the annual reports, along with the notice and waiver forms, because of their failure to meet the demands of K.S.A. 2021 Supp. 60-211(a).

In support of his claim, Merryfield directs our attention to *Mangiaracina v. Gutierrez*, 11 Kan. App. 2d 594, 595, 730 P.2d 1109 (1986), for the proposition that "[o]ur legal system cannot function on any basis other than equal treatment of all litigants. To have different rules for different classes of litigants is untenable." His argument seems to be that if some of his own pro se filings were stricken during his case

8

because they were submitted without his attorney's signature, then it would be unfair to allow the State to submit documents to the court that are not signed by the attorney for the State, i.e., the Attorney General. Merryfield's reliance on the *Mangiaracina* quote is misplaced because, when it is reunited with its surrounding context, it actually reflects that the panel intended to communicate that a pro se litigant is held to the same rules of procedure and evidence as those who are represented by counsel. 11 Kan. App. 2d at 595-96.

Merryfield correctly observes that the KSVPA is civil in nature and subject to the Kansas Rules of Civil Procedure "except as expressly provided elsewhere in the [KSVPA]." K.S.A. 2021 Supp. 59-29a04(g). At the same time, he misconstrues this provision to mean that the Rules of Civil Procedure apply unless the KSVPA *specifically* excludes them. The plain language of K.S.A. 2021 Supp. 59-29a08(a) reflects the contrary to be true. That is, the legislature intended that the specific procedures for submitting the annual report and related documents apply rather than the more general process for filing pleadings in a civil case. Stated more directly, Merryfield's assertion that the district court lacked jurisdiction because the annual reports submitted by the Secretary of KDADs lacked the Attorney General's signature is not persuasive.

Merryfield further contends the notice of rights and waiver forms were likewise legally infirm given that they were never signed by his attorney as required by K.S.A. 2021 Supp. 60-211(a). But K.S.A. 2021 Supp. 59-29a08(a) plainly directs the Secretary to simply provide the person with the annual written notice of rights and waiver forms before submitting the same to the district court. Again, it was the intent of the legislature that the more specific procedures of that provision control these proceedings over the more general directives found at K.S.A. 2021 Supp. 60-211(a). That being said, the absence of Merryfield's counsel's signature from those documents did not strip the district court of jurisdiction.

9

Put simply, Merryfield fails to show that non-compliance with K.S.A. 2021 Supp. 60-211(a) in the filing of the annual reports deprived the district court of jurisdiction.

> b. *The district court's failure to enter an order after an individual waives their right to request an annual review hearing does not deprive the court of jurisdiction to conduct the next year's annual review.*

Merryfield's next jurisdictional challenge arises out of the process which occurs following the filing of the annual report; specifically when a person fails to request an annual review hearing within 45 days as required by K.S.A. 2021 Supp. 59-29a08(b). Merryfield concedes that neither he nor his attorney requested an annual review hearing after the 2018 annual report was filed. Yet he contends the district court violated the statute by conducting an in-camera review and ultimately issuing an order of its findings about that report. See K.S.A. 2018 Supp. 59-29a08(f). As a related matter, he challenges the continued validity of this court's decision in *Griffin v. Bruffett*, 53 Kan. App. 2d 589, 598, 389 P.3d 992 (2017), which held that the filing of the annual evaluation and notice of right or waiver is the "cutoff for challenging the *prior* year's commitment."

To place Merryfield's arguments in the proper context, an overview of the relevant dates as they relate to his annual examinations is helpful:

- **December 19, 2018**:  The 2018 annual report, along with Merryfield's signed acknowledgment of receipt and waiver form, is filed in the district court.
- **December 18, 2019**: The 2019 annual report, along with Merryfield's signed acknowledgment of receipt and waiver form, is filed in the district court.
- **January 30, 2020**: Merryfield filed a request for an annual review hearing on the 2019 annual report.

10

- **July 27, 2020**: Merryfield filed a request for a decision on the 2018 annual report, asserting that the review is still "open and waiting for the Judge to complete the in-camera review pursuant to K.S.A. § 59-29a08(f)."
- **September 29, 2020**: The district court entered an order finding Merryfield waived the right to request a review hearing on the 2018 annual report by failing to file a request within 45 days of the filing.
- **January 22, 2021**: The district court entered an order related to both the 2018 and 2019 annual reports.

To begin, as Merryfield notes, this court previously addressed the time limitations of the KSVPA annual review procedures in *Griffin*. Although raised in the context of a habeas petition under K.S.A. 60-1501, Griffin argued that his statutory and constitutional rights were violated because the district court repeatedly failed to hold annual review hearings or issue recommitment orders. Our court agreed that such negligence was "particularly significant and egregious," and resulted in a violation of Griffin's procedural due process rights. 53 Kan. App. 2d at 596. But it determined that most of the claims being raised were untimely. 53 Kan. App. 2d at 596-600. In reaching that conclusion, the panel explained that "[b]ecause a commitment [under the KSVPA] is only valid for a year, there must be a point at which each year becomes final for purposes of challenging confinement during that period." 53 Kan. App. 2d at 597. It went on to conclude that it was reasonable to set the "cutoff" date for challenging a prior year's commitment as the date the new annual evaluation and notice are filed in the district court. 53 Kan. App. 2d at 598-99.

According to Merryfield, the district court lacked the authority to conduct an annual review hearing based on his 2019 annual report pursuant to the reasoning in *Griffin* because that report was filed before the court concluded its review on his 2018 annual report. For clarification, Merryfield incorrectly asserts that the 2018 review concluded on September 29, 2020. But according to the record the relevant date is

11

actually January 22, 2021, which is when the district court entered its order noting that it conducted its in-camera review of the 2018 annual report and determined that Merryfield's condition had not significantly changed as to warrant transitional release. Thus, Merryfield's contention is that the district court's failure to enter an order to officially "conclude" the 2018 annual review somehow deprived the court of jurisdiction to begin the 2019 annual review process.

Merryfield's arguments on this point are somewhat contradictory. First, he asserts that applying *Griffin* to the facts of his case would mean that his 2019 and 2020 annual reports needed to be stricken from the record because they were filed before the district court finalized his 2018 report. He requests that we find "there is no jurisdiction for an annual review until one year from the date the last re-commitment order was entered, a date which will not be static and will always change each year." But adopting Merryfield's proposed jurisdiction rule would run afoul of both the KSVPA and the United States Supreme Court's decision in *Kansas v. Hendricks*, 521 U.S. 346, 117 S. Ct. 2072, 138 L. Ed. 2d 501 (1997) (upholding the constitutionality of the KSVPA).

Starting with the KSVPA, Merryfield misconstrues the language of the statutes governing the annual review process. The only case he cites to support his arguments is *Griffin*, but that case did not present precisely the same question as he proposes to us. While the *Griffin* panel indeed discussed the time limitations of the KSVPA's annual review process, those discussions occurred in the context of a habeas proceeding in accordance with K.S.A. 60-1501(c) (requiring persons committed under the KSVPA to petition for a writ of habeas corpus "within 30 days from the date the action was final"). We find that the *Griffin* panel's discussion about the finality of an annual commitment order is merely instructive and therefore not binding on our analysis of this matter because:  (1) this is not a habeas proceeding, and (2) this court is not bound by decisions from other panels of this court. See *State v. Fleming*, 308 Kan. 689, 706, 423 P.3d 506 (2018).

12

Generally, time requirements under the KSVPA are viewed as directory rather than mandatory. K.S.A. 2021 Supp. 59-29a01(b). Notably, the provision outlining the procedures for an annual review hearing are silent about any specific time frame during which a district court must conduct an annual review hearing. See *Griffin*, 53 Kan. App. 2d at 597 (observing that the KSVPA "allows for some variance regarding the completion of recommitment proceedings").

Since Merryfield did not request a hearing after his 2018 annual report, K.S.A. 2018 Supp. 59-29a08(f) applies. That statute provides:

> "the court that committed the person under the Kansas sexually violent predator act shall then conduct an in camera annual review of the status of the person's mental condition and determine whether the person's mental abnormality or personality disorder has significantly changed so that an annual review hearing is warranted. The court shall enter an order reflecting its determination." K.S.A. 2018 Supp. 59-29a08(f)

Merryfield asserts that the district court ignored the requirement to do an in-camera review and essentially concluded no review would be completed given that Merryfield did not request one. But the district court did conduct an in-camera review, albeit only confirming that it did so in its January 2021 ruling. Because the statute is silent about any specific timeline for the district court to conduct the in-camera review or enter an order, the question turns to what would be a reasonable time.

We choose to align with the *Griffin* panel's observation that the filing of the annual report and notice of right or waiver provides an individual with sufficient notice that a recommitment order is imminent. See *Griffin*, 53 Kan. App. 2d at 598. This interpretation of what is reasonable does not pose a risk of indefinite confinement because the State remains obligated to perform annual examinations and provide notice to individuals committed under the KSVPA of their right to request an annual review hearing under K.S.A. 2021 Supp. 59-29a08(a). Thus, the filing of the new annual report and notice

13

effectively restarts the clock for an individual committed under the KSVPA to challenge a prior year's report. Put another way, if an individual fails to timely request an annual review hearing in one year, they will get another opportunity to request a hearing the next year when a new annual report is filed.

We also derive support for this conclusion of what constitutes a reasonable time frame from the plain language of the statute because the right to request an annual review hearing exists only during a 45-day window after the filing of the annual report. Failure to do so waives that right "until the next annual report is filed by the court." K.S.A. 2021 Supp. 59-29a08(b). The annual review process reflects the reality that the SPTP is not entirely linear, meaning that a person's condition can either improve or regress between years. As the facts here show, the district court can incorporate a determination on a prior year's annual report when issuing a probable cause ruling on a current request for a hearing. This is especially true when, as is the case here, an individual waives their right to contest the annual examination by not requesting a hearing and then raises no challenges to their confinement until a new annual report is filed.

For these reasons, we reject Merryfield's contention that the district court lacked jurisdiction to hold a review hearing on his 2019 annual report.

THE DISTRICT COURT PROPERLY DECLINED MERRYFIELD'S REQUEST
TO BE RETURNED TO TRANSITIONAL RELEASE

Merryfield next contends that the district court erred in denying his request for a return to transitional release on both the 2018 and 2019 annual reports. First, separate from his jurisdictional challenge, Merryfield argues the 2018 annual report demonstrated he was entitled to an evidentiary hearing and an order for transfer to transitional release. As for the 2019 annual report, Merryfield advances two challenges to the district court's conclusion that he had no right to be returned to transitional release: 1) the PRP lacked

14

the statutory authority to order him to return from the reintegration phase to secure confinement; and 2) his assignment to reintegration at Maple House falls within the statutory definition of transitional release, so the district court erred in concluding he could not be "return[ed]" to that status.

*Standard of review*

Resolution of these issues involves interpretation of the KSVPA which presents a question of law subject to de novo review. See *Nauheim v. City of Topeka*, 309 Kan. at 149.

*a. Merryfield was not entitled to an annual review hearing or an order for transitional release based on his 2018 annual report*

Notably, Merryfield repeatedly concedes that he did not request a hearing within 45 days after his 2018 annual report was filed. His contention of error consists of a claim that the district court "ignored" the statute and failed to conduct an in-camera review as required. But his claim is unquestionably belied by the record. In its January 2021 ruling, the district court specifically concluded that Merryfield's condition had not transformed to warrant transitional release based on the information in the 2018 annual report, a conclusion that could be reached only following an in-camera review.

Merryfield alternatively argues that even if the district court comprehensively reviewed the annual report as required, it erred in its interpretation of its substance because the report accurately reflected that he was moved to a "Transition House," a facility which would allow him to reintegrate into the community. According to Merryfield, this proves that his condition had indeed improved enough to warrant placement in transitional release, or at the very least an evidentiary hearing. Merryfield's ability to affix a self-serving label to his placement does not then convert his treatment level to transitional release. Again, the district court was never convinced that the 2018

15

annual report showed enough to warrant a probable cause hearing, let alone a full evidentiary hearing.

The district court did not reach its conclusion in error. Merryfield's 2018 annual review definitively states that "the clinicians concluded [his] mental abnormality or personality disorder has not so changed that [he] would be safe to be placed in transitional release. Therefore, it is not recommended that [he] petition the court for transitional release at this time." The text of the annual report also explains that Merryfield was moved to a reintegration facility in June 2018 and was in Tier Three of the SPTP at the time. While Tier Three and transitional release happen to be located at the same facility, "[t]he work of Tier Three is preparation for Transitional Release." Put simply, Merryfield's assertion that he was in "transition" or "transitional release" at the time of the 2018 annual report is disproven by the record.

Merryfield fails to substantiate his allegations that the district court erred in finding he was not entitled to an annual review hearing or eligible for transitional release based on the 2018 annual report.

> *b. When Merryfield was never on transitional release at any point it cannot be said the district court erred in finding him ineligible for <u>return</u> to transitional release.*

The next step of our analysis requires consideration of Merryfield's 2019 annual report. Merryfield contends the district court erred when it found he was never previously ordered to transitional release and therefore could not be "return[ed]" to that status. The crux of his argument is that the statutory definition for "transition," or "transitional release" necessarily encompasses "reintegration" under the KSVPA, and the district court erred in concluding otherwise.

16

As Merryfield acknowledges, a nearly identical issue was addressed by this court's decision in *In re Care and Treatment of Twilleger*, 46 Kan. App. 2d 302, 263 P.3d 199 (2011). In that case, the panel interpreted the KSVPA and concluded that placement in a transition house under the version of the SPTP in place at the time did not constitute "transitional release" as defined by the statute because "transitional release" is only available through an order of the court. 46 Kan. App. 2d at 309.

Merryfield tries to distinguish *Twilleger* by highlighting the fact the SPTP was modified from a seven-phase progressive program under the Department for Social and Rehabilitation Services (SRS), to its current three-tier system run by KDADS. He also notes that the Kansas Legislature amended the definition of "[t]ransitional release" in 2018 to the current definition, which includes "any halfway house, work release, sexually violent predator treatment facility or other placement designed to assist the person's adjustment and reintegration into the community." K.S.A. 2021 Supp. 59-29a02(i). We do not find either of these points particularly persuasive.

First, any restructuring of the SPTP or legislative changes that occurred since *Twilleger* did not materially change the procedural requirements of the KSVPA. The only way to enter the transitional release phase is, and always has been, exclusively through a court order. See K.S.A. 2021 Supp. 59-29a08(h), (i); K.S.A. 2021 Supp. 59-29a10(a). See also *In re Care and Treatment of Saiz,* 60 Kan. App. 2d 178, 492 P.3d 484 (2021) (finding district court abused its discretion in ordering immediate release because of the specific procedural requirements of the KSVPA). Nothing in the record supports Merryfield's assertion that his progression to Tier Three of the SPTP in June 2018, acted as the functional equivalent of a court order placing him on transitional release.

Next, Merryfield's suggestion that the legislature added "reintegration" to the statutory definition of transitional release lacks any solid foundation. The only modification to that provision in 2018 was the deletion of language at the end of the

17

definition, in particular "once released from commitment." See L. 2018, Ch. 94, § 1. The term "reintegration" has been a part of the definition since its adoption in 1998. See L. 1998, ch. 198, § 3. Accordingly, we fail to find any error in the district court's refusal to "return" Merryfield to transitional release given that a court never previously issued an order elevating Merryfield to that phase of the program.

### c. The PRP did not act outside the scope of its authority when it removed Merryfield from reintegration and returned him to secure confinement.

Merryfield next argues that the PRP lacked authority to remove him from reintegration and return him to secure confinement in August 2019. As he points out, the KSVPA was amended in 2018 to define the "progress review panel" as "individuals appointed by the secretary for aging and disability services to evaluate a person's progress in the sexually violent predator treatment program." K.S.A. 2021 Supp. 59-29a02(m). According to Merryfield, this definition only gives the PRP the authority to evaluate his progress in the SPTP. It does not correspondingly vest it with the authority to take any steps it finds prudent as a result of its evaluation. Thus, his demotion to secure confinement was unlawful.

While Merryfield is correct about the defining language in the provision, a longstanding rule precludes an award of relief on this point. As this court recently stated, "courts should defer to the judgment of mental health professionals on the treatment staff of the SPTP about which treatment methods are appropriate for a particular person." *Saiz,* 60 Kan. App. 2d at 186-87; see also *In re Twilleger*, 46 Kan. App. 2d at 309 (citing *Youngberg v. Romeo*, 457 U.S. 307, 322-23, 102 S. Ct. 2452, 73 L. Ed. 2d 28 [1982]); and *Merryfield v. State*, 44 Kan. App. 2d 817, 821, 241 P.3d 573 (2010) (same). Put simply, Merryfield fails to show why this court should not defer to the judgments of the mental health professionals comprising the PRP, who concluded that Merryfield's actions warranted demotion from reintegration back to secure confinement. It is noteworthy to

18

mention that to accept Merryfield's assertions about the PRP as true would mean that his advancement from previous tiers to reintegration was similarly unlawful.

Our collective analysis of the various challenges Merryfield advanced against the district court's refusal to "return" him to transitional release convince us that error did not occur in this regard. The decision of the district court is affirmed.

THE QUESTIONS OF WHETHER THE DISTRICT COURT VIOLATED MERRYFIELD'S EQUAL PROTECTION AND DUE PROCESS RIGHTS ARE NOT PROPERLY BEFORE US.

Merryfield argues that he endured an equal protection violation when the district court held his annual review hearing without him present. Thus, according to Merryfield, the KSVPA is constitutionally infirm because it allows those review hearings to be held *in abstentia*, while other hearings contemplating either civil or criminal confinement generally require the person's presence. In a somewhat related vein, he contends the district court violated his right to due process because his return to secure confinement deprived him of a liberty interest given that placement in that tier is accompanied by significantly greater restrictions.

Our first obligation is to determine whether these issues are properly preserved for our review. Issues not raised before the district court, including constitutional ones, generally are not properly before an appellate court for its consideration. *Bussman v. Safeco Ins. Co. of America*, 298 Kan. 700, 729, 317 P.3d 70 (2014). But there are several exceptions, including: (1) the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) the district court was right for the wrong reason. *In re Estate of Broderick*, 286 Kan. 1071, 1082, 191 P.3d 284 (2008), *cert. denied* 555 U.S. 1178

19

(2009). Merryfield bore the burden to show, in his brief, how one of these exceptions applies to his case but this he did not do.

The rule requiring identification and discussion of an applicable exception is consistent with Supreme Court Rule 6.02(a)(5) (2022 Kan. S. Ct. R. at 36) which requires an appellant to explain why an issue that was not raised below should be considered for the first time on appeal. *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019). In *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014), and *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015), the Kansas Supreme Court has warned that Supreme Court Rule 6.02(a)(5) would be strictly enforced, and litigants who failed to comply with this rule risked a ruling that the issue is improperly briefed, and the issue will be deemed waived or abandoned. See *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018).

We acknowledge that Merryfield's equal protection argument does include a very general "Rule 6.02(a)(5) Statement" that sets forth the recognized exceptions and assures us that "[w]hen present the argument in the brief will show the reason for the exception." Yet when discussing this issue, the extent of his explanation for the application of an exception is that his absence from the annual review hearings prevented him from raising it below, coupled with a conclusory allegation that his attorney's failure to properly communicate with him contributed to the failure to present this argument to the district court. To the extent that it can be considered a contrast, Merryfield's due process claim fails to include even a cursory mention of the exceptions, not to mention an analysis of how or which one alleviates his failure to raise the issue below so that we might consider the merits of the issue.

Stated simply, Merryfield's brief falls short of what is required. Merely identifying the exceptions is not enough to sustain his burden. He must go one step further and explain why, under the facts of his case, the exception he relies on paves the way for us to

review his claims. Without that crucial discussion, we decline to engage in an analysis of the merits of this issue.

The fact Merryfield is a pro se litigant is not lost on us. But the pro se liberal construction rule provided for under Kansas law does not mean that pro se litigants are free to ignore procedural requirements. Instead, "[w]hile pro se pleadings are to be liberally construed so that relief may be granted if warranted by the facts alleged, this simply means that the substance of the pleading controls over its label." *In re Estate of Broderick*, 34 Kan. App. 2d 695, 701, 125 P.3d 564 (2005). As a result, we have explained:

> "'A pro se litigant in a civil case is required to follow the same rules of procedure and evidence which are binding upon a litigant who is represented by counsel. Our legal system cannot function on any basis other than equal treatment of all litigants. To have different rules for different classes of litigants is untenable. A party in civil litigation cannot expect the trial judge or an attorney for the other party to advise him or her of the law or court rules, or to see that his or her case is properly presented to the court. A pro se litigant in a civil case cannot be given either an advantage or a disadvantage solely because of proceeding pro se.' *Mangiaracina v. Gutierrez*, 11 Kan. App. 2d 594, 595-96, 730 P.2d 1109 (1986)." 34 Kan. App. 2d at 701.

Thus, while we should liberally construe arguments when properly raised, we are prohibited from addressing arguments that are not properly before us. See also K.S.A. 60-2101(a) (explaining this court's limited jurisdiction). Nor can we bolster arguments that are properly before us but inadequately briefed. See *In re Adoption of T.M.M.H.*, 307 Kan. 902, Syl. ¶ 6, 416 P.3d 999 (2018) (holding that a point raised without pertinent authority or without analysis explaining why it is sound despite a lack of supporting authority is inadequately briefed and thus abandoned).

In summary, Merryfield neglected to follow the proper procedure governing a litigant's efforts to obtain review of an issue for the first time on appeal. Consequently, we decline to consider the merits of his equal protection and due process claims.

## MERRYFIELD'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM CANNOT BE RAISED FOR THE FIRST TIME ON APPEAL

Merryfield's final argument is that he received ineffective assistance of counsel during the proceedings below. First, he contends his initial appointed counsel failed to communicate with him about the status of his case. Then, when the district court appointed new counsel, she committed the same transgression.

This issue likewise suffers procedural infirmities which bind our hands. While the record reflects that Merryfield arguably presented his ineffective assistance claims to the district court, he did not do so until after the court issued its September 2020 and January 2021 rulings, i.e., the rulings that are the key subject of Merryfield's current appeal. Notably, those motions remained outstanding when his appeal was docketed. Once that docketing process was complete, the district court lost jurisdiction to enter a ruling on the motions challenging counsel's representation. See *In re Care & Treatment of Emerson*, 306 Kan. 30, 35, 392 P.3d 82 (2017) (district court loses jurisdiction upon docketing of the appeal).

The district court denied Merryfield's pro se motion for replacement of counsel and counsel's related request to withdraw in July 2021. But because Merryfield's appeal was already docketed, that July 2021 judgment was not a valid and effective judgment for purposes of this appeal. Consequently, Merryfield is effectively raising his ineffective assistance of counsel claims for the first time on appeal.

Appellate courts generally will not consider an allegation of ineffective assistance of counsel raised for the first time on appeal. *State v. Salary*, 309 Kan. 479, 483, 437 P.3d 953 (2019). The factual aspects of a claim of ineffective assistance of counsel require that the matter be resolved through either a K.S.A. 60-1507 motion or a remand to the district court for an evidentiary hearing pursuant to *State v. Van Cleave*, 239 Kan. 117, 119-21, 716 P.2d 580 (1986). An appellate court may consider a claim of ineffective assistance of counsel for the first time on appeal only when there are no factual issues, and the two-prong ineffective assistance of counsel test can be applied as a matter of law based on the appellate record. *Salary*, 309 Kan. at 483-84. Merryfield's claims are too factually driven to be resolved in that manner. Nor did Merryfield request a *Van Cleave* hearing and, without any such a request we are under no obligation to enter such a remand order sua sponte. See *Mundy v. State*, 307 Kan. 280, 299-300, 408 P.3d 965 (2018).

Because factual issues remain unresolved in the record, we are foreclosed from applying the ineffective assistance of counsel test as a matter of law. See *Wimbley v. State*, 292 Kan. 796, 807, 275 P.3d 35 (2011). Thus, we reject Merryfield's ineffective assistance of counsel claims as unpreserved.

Affirmed.