NOT DESIGNATED FOR PUBLICATION

No. 127,078

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Care and Treatment of LESTER D. THOMAS.

MEMORANDUM OPINION

Appeal from Johnson District Court; JAMES CHARLES DROEGE, judge. Submitted without oral argument. Opinion filed July 3, 2025. Reversed and remanded with directions.

*Richard P. Klein,* of Lenexa, for appellant.

*Kurtis K. Wiard,* assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before PICKERING, P.J., ISHERWOOD and HURST, JJ.

HURST, J: More than three years after stipulating to being a sexually violent predator under the Kansas Sexually Violent Predator Act (KSVPA), K.S.A. 59-29a01 et seq., Lester D. Thomas filed a pro se motion titled "Motion to Withdraw Counsel and Re-Appointment of Counsel" alleging his attorney provided ineffective assistance of counsel by misleading, misinforming, coercing, and bribing him to enter into the stipulation. The district court construed Thomas' motion as a request for relief from judgment under K.S.A. 60-260—a procedural mechanism for objecting to civil judgments—and did not analyze Thomas' allegations under the standards applicable to ineffective assistance of counsel claims. While K.S.A. 60-260 motions offer remedies to those objecting to civil judgments, the statute affords no mechanism for relief related to claims of constitutional violations or requests for constitutional protections by persons detained as sexually violent predators.

1

The district court erred by failing to construe Thomas' filing as a K.S.A. 60-1501 petition alleging ineffective assistance of counsel claims. The district court's dismissal is reversed and remanded with instructions to transfer the case to the correct venue as a motion alleging ineffective assistance of counsel for consideration under K.S.A. 60-1501. While the court might ultimately determine Thomas is not entitled to relief, that determination must be made by applying the correct legal standard—this is of particular consequence when constitutional rights are implicated.

FACTUAL AND PROCEDURAL BACKGROUND

After he had served almost 30 years in prison for sexually violent offenses and with his release date fast-approaching, the State petitioned to have Thomas deemed a sexually violent predator and civilly committed under the KSVPA. At the probable cause hearing on June 16, 2017, the State presented testimony from Dr. Carol Crane, a forensic psychologist, outlining Thomas' various mental conditions, actuarial test results showing high relative risk of reoffending, and recorded incidents of inappropriate sexual behavior while incarcerated. Based on Thomas' convictions of sexually violent offenses and the testimony of Dr. Crane, the district court found probable cause to require Thomas to have further evaluation at Larned State Hospital. Between the hearings held in June 2017 and July 2019, four different attorneys had represented Thomas.

On July 25, 2019, the Johnson County District Court held a hearing at which Thomas entered a stipulation and order that he was a sexually violent predator as defined in K.S.A. 59-29a01 et seq. The district court ordered Thomas into the custody of the Secretary of the Department of Aging and Disability Services for control, care, and treatment in the Sexual Predator Treatment Program at Larned State Hospital until he met the conditions prescribed for release under K.S.A. 2019 Supp. 59-29a07. Although it appears Thomas was sent annual notices of his right to petition for release from treatment

in 2020, 2021, and 2022, the record on appeal does not contain those notices or indicate that Thomas requested a hearing regarding his eligibility before this case.

On September 29, 2022—two months after receiving his annual notice—Thomas filed a pro se motion in the Johnson County District Court. In his pleading titled "Motion to Withdraw Counsel and Re-Appointment of Counsel," Thomas claimed his attorney (P.S.) was ineffective by misleading, misinforming, coercing, and bribing him into stipulating at the July 2019 hearing. In the same envelope with the motion, Thomas enclosed copies of a letter labeled "Exhibit A," which included a scan of a money order receipt and a deposit in Thomas' patient trust fund, another letter, and a handwritten note. The Exhibit A letter was dated August 16, 2019, and sent to Thomas at Larned State Hospital from his attorney. It stated: "RE: Property. . . Please find enclosed Money Order . . . to assist you with legal fees regarding communication to resolve your legal matter. In addition, we are sending your property we have received from the Johnson County Sheriff's Office." The second enclosure was a receipt for a money order for $100 from P.S.'s law firm to Thomas' patient trust fund at Larned. The third enclosure was another letter from his attorney dated January 7, 2020, that stated: "RE: Request . . . Please find the prepaid money card, per your request. If you need any future legal assistance, please do not hesitate to reach out." The fourth enclosure was a handwritten note from Thomas to the district court clerk about additional evidence that he would like to give to a new attorney, including "the Gift Card [my attorney] gave me to stipulate."

On July 24, 2023, the district court held a Zoom hearing on Thomas' motion. At the hearing, Thomas' attorney said he was counsel of record but had a conflict that prevented him from representing Thomas' interests, given the nature of Thomas' legal position and request. The attorney stated that he would have to withdraw and that Thomas would need to waive his right to attorney-client privilege to allow the attorney to respond to Thomas' allegations. The court asked Thomas if he wished for his attorney to withdraw and to waive his attorney-client privilege. Thomas responded that he wanted a

3

lawyer to represent him on the claims in his motion and that he had a gift card he wanted to present as evidence of bribery. The district court apparently took the exchange of money as true and rejected Thomas' presentation of the gift card. The district court also rejected Thomas' request to have an attorney present at the hearing, reasoning it was unnecessary because the court had a record showing Thomas' attorney "adequately represented" him at the hearing.

After Thomas insisted he did not understand the situation and reiterated his position, the district court pointed out that four years was a long time to wait before bringing up the issue. In response, Thomas said that he tried to get it done, that he had repeatedly asked his attorney to get his issues to court for the last three years, and that his attorney blocked his efforts because of the nature of Thomas' allegations. Thomas' attorney reiterated that he believed, given the nature of Thomas' legal position, that he had a conflict that prevented him from representing Thomas' interest or giving him any advice.

The district court denied Thomas' motion in the Journal Entry and Order filed on October 27, 2023. The district court found that payments made to Thomas by his attorney were made in August 2019 and January 2020—after the July 25, 2019, stipulation hearing. Given the timeline, the district court found "the aforementioned payments could not have induced the stipulation." The district court found that upon a review of the testimony in the transcript and Thomas' statements, "the weight of the evidence is that [Thomas'] stipulation was knowingly . . . made of his own free will, without threat or coercion." The district court also found that Thomas' refusal to waive his right to attorney-client privilege prevented counsel from addressing the questions or facts alleged. The district court stated that Thomas' motion, "given the relief he seeks, may be construed as a motion for new trial or to alter or amend the judgment entered on July 19, 2019," and when he filed his motion on September 29, 2022, the time for such a motion had passed.

The district court appointed Thomas new appellate counsel on November 13, 2023. Thomas—through this newly appointed counsel—filed a notice of appeal of the district court's order.

DISCUSSION

On appeal, Thomas argues that the district court should have construed his pro se motion as one alleging ineffective assistance of counsel under K.S.A. 60-1501 and, even if the court correctly construed his motion under K.S.A. 60-260, it erred by finding the motion untimely and failing to fairly consider the due process violations. The State contends that the district court properly analyzed Thomas' motion under K.S.A. 60-260 and determined Thomas' claim was not meritorious after considering the transcript of the stipulation hearing and the attorney's reputation. The State also argues Thomas' motion was untimely.

"Whether the district court correctly construed a pro se pleading is a question of law subject to unlimited review." *State v. Kelly*, 291 Kan. 563, Syl. ¶ 2, 244 P.3d 639 (2010). Courts liberally construe pro se pleadings, giving effect to the pleading's content rather than the labels, titles, and forms used to articulate the defendant's arguments. 291 Kan. 563, Syl. ¶ 1; see, e.g., *Bruner v. State*, 277 Kan. 603, 605, 88 P.3d 214 (2004). A pro se defendant's failure to cite to the correct statutory grounds for their claim does not undermine their ability to make the claim. *Kelly*, 291 Kan. at 565; see *Bruner*, 277 Kan. at 605.

In determining whether the court properly construed Thomas' motion, it is necessary to understand the proceedings and Thomas' current confinement. The KSVPA is a comprehensive statutory scheme for the civil commitment of persons alleged to be sexually violent predators for potentially long-term control, care, and treatment after they have served their criminal sentences. *In re Care & Treatment of Ellison*, 305 Kan. 519, 520, 385 P.3d 15 (2016); K.S.A. 2024 Supp. 59-29a01. After some administrative

5

procedures, the district court must make a probable cause determination of whether the detainee meets the definition of a sexually violent predator. See K.S.A. 2024 Supp. 59-29a04(a); K.S.A. 2024 Supp. 59-29a02(a). If such determination is made, the person is taken into custody pending further proceedings under the KSVPA. See K.S.A. 2024 Supp. 59-29a05(a). The KSVPA provides a procedure for trial—either to the court or a jury—to determine whether the person is a sexually violent predator beyond a reasonable doubt. See K.S.A. 2024 Supp. 59-29a06; K.S.A. 2024 Supp. 59-29a07(a). If the court or jury determines that the person is a sexually violent predator, the person "shall be committed to the custody of the secretary for aging and disability services for control, care and treatment until such time as the person's mental abnormality or personality disorder has so changed that the person is safe to be at large." K.S.A. 2024 Supp. 59a07(a).

KSVPA detention implicates a person's liberty interests, and thus a detainee has due process rights related to that detention. *Ellison*, 305 Kan. at 526; see also *Johnson v. State*, 289 Kan. 642, 649-50, 215 P.3d 575 (2009). Additionally, a person prosecuted or committed through the KSVPA has a constitutional right to counsel which includes a right to competent, effective counsel. *In re Care & Treatment of Ontiberos*, 295 Kan. 10, 20, 287 P.3d 855 (2012) (quoting *Albright v. State,* 292 Kan. 193, 207, 251 P.3d 52 [2011] ["regardless of the source of the right, a right to counsel, to be meaningful, necessarily includes the right to effective assistance of counsel"]). Furthermore, a KSVPA detainee may bring a claim of ineffective assistance of counsel through a K.S.A. 60-1501 motion as follows:

> "(c) Except as provided in K.S.A. 60-1507, and amendments thereto, a patient in the custody of the secretary for aging and disability services pursuant to K.S.A. 59-29a01 et seq., and amendments thereto, shall file a petition for writ pursuant to subsection (a) within 30 days from the date the action was final, but such time is extended during the pendency of the patient's timely attempts to exhaust such patient's administrative remedies." K.S.A. 2024 Supp. 60-1501(c); see also *Ontiberos*, 295 Kan. at 27.

6

Having established that a person in Thomas' position has a right to seek redress for allegations of ineffective assistance of counsel through a K.S.A. 60-1501 petition, this court must determine whether Thomas sought that remedy. Thomas filed his motion in the Johnson County KSVPA case in which he was civilly committed. Thomas' motion is titled "Motion to Withdraw Counsel and Re-Appointment of Counsel." The first sentence of the motion says: "COMES NOW the Respondent acting pro se, and hereby moves the Court to appoint an appeals attorney to represent this Respondent because of the *ineffective and misrepresentation with coercion and bribery* through financial means of my present attorney [P.S.].(Emphasis added.)" In support of the opening allegation of ineffective assistance of counsel, Thomas stated the following:

"1. The Respondent was not given an accurate understanding concerning the stipulation process, and the rights he would be giving up to appeal the civil commitment decision.

"2. The Attorney representing the Respondent influenced and made the Respondent believe that he could request and file for a release from the civil commitment SPTP program as well. The Respondent was told and assured that His Attorney would continue to help the Respondent financially if he by-passed a trial which he convinced this Respondent he would not have a chance of succeeding in or winning after two years in the Johnson County Jail.

"3. Respondent's attorney also showed some paperwork to sign prior to the hearing while in a meeting with this Respondent in a conference room. [P.S.], the attorney then informed that he would assist financially and that if the Respondent wanted out of the county jail that by-passing trial and stipulation was the only chance for the Respondent to speed up the process.

"4. The Respondent then asked attorney [P.S.] to file motions challenging the civil commitment the attorney General filed 5 days before Respondent[']s release from the butler County jail in Eldorado Kansas but [P.S.] continued to impress on this Respondent that he had no chance to be free.

"5. Attorney [P.S.] continued to assert that with a prison record alone such as the Respondent had he would be found guilty as a sexual predator. [P.S.] also stated that due to having disciplinary reports for lewd act[s] (masturbating) in prison it was enough for

7

the attorney general Dorenda Mitchell to succeed or win at a trial and civil[ly] commit this Respondent.

"6. As the Respondent it is not thought or believed that the attorney [P.S.] represented this Respondent to the fullest extent possible in this case. [P.S.] failed to take into account the informing him of being drowsy due to affects and side effects of Seraquel causing some confusion and misled the Respondent into signing and or agreeing to what [P.S.] called stipulation. The attorney then went on to say he would help this Respondent (financially) once I, his client arrived at Larned State Hospital Sexual Predator Program. (see Exhibit A)

"7. In the best of understanding, thinking and belief of the Respondent this was misrepresentation and unethical conduct on the part of [P.S.] the attorney on this case with question and suspicion of bribery and coercion to obtain a signature approving the stipulation documents."

The district court determined that "given the relief [Thomas] seeks," the motion "may be construed as a motion for new trial or to alter or amend the judgment" under K.S.A. 60-260. Subsection (b) of K.S.A. 2024 Supp. 60-260 says that a litigant in a civil case may seek relief from the judgment or order for the following reasons:

"(1) Mistake, inadvertence, surprise or excusable neglect;
(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under subsection (b) of K.S.A. 60-259, and amendments thereto;
(3) fraud, whether previously called intrinsic or extrinsic, misrepresentation or misconduct by an opposing party;
(4) the judgment is void;
(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
(6) any other reason that justifies relief."

Motions to alter or amend a civil judgment under K.S.A. 2024 Supp. 60-260(b) "must be made within a reasonable time, and for reasons under paragraphs (b)(1), (2), and (3) no

8

more than one year after the entry of the judgment or order, or the date of the proceeding." K.S.A. 2024 Supp. 60-260(c).

The State argues that construing Thomas' motion under K.S.A. 60-1501 would expand it by adding legal theories that were never discussed in district court. Yet the State cites no legal authority for the conclusion that K.S.A. 60-260 applies to KSVPA detainees seeking redress for ineffective assistance of counsel. While the State cites a case from a panel of this court confirming that pro se litigants must follow statutory requirements when seeking discovery from nonparties to a suit, it is irrelevant to the issues and facts here. See *In re Estate of Broderick*, 34 Kan. App. 2d 695, 701, 125 P.3d 564 (2005) (requiring a pro se litigant in a civil matter to comply with rules related to requesting records from a nonparty).

First, Thomas does not seek to avail himself of the rules of civil procedure—he seeks to assert his constitutionally protected right to effective counsel. See *Ontiberos*, 295 Kan. at 25. Second, the issue here is not related to court procedure or mechanisms but to the interpretation and analysis of Thomas' motion. The court has a long-standing, well-established rule to give effect to a defendant's intent rather than require strict adherence to formality of titling a motion. See *Kelly*, 291 Kan. at 565 ("Pro se pleadings are liberally construed, giving effect to the pleading's content rather than the labels and forms used to articulate the defendant's arguments."); *Bruner*, 277 Kan. at 605 ("It is immaterial that Bruner did not specifically identify the statute."); see also *State v. Andrews*, 228 Kan. 368, 370, 614 P.2d 47 (1980) ("Pro se pleadings are to be liberally construed.") Even so, a liberal construction seems somewhat unnecessary here—the purpose of Thomas' motion is plain on its face. The first line of Thomas' motion asserts that his attorney is "ineffective" and engaged in "misrepresentation with coercion and bribery."

Thomas did not cite to K.S.A. 60-260 in his motion as though he sought relief pursuant to its terms. And K.S.A. 60-260 does not provide a mechanism for claims of

9

ineffective assistance of counsel for KSVPA detainees. In fact, litigants in civil matters to which K.S.A. 60-260 applies generally do not have a right to effective counsel; the Sixth Amendment to the U.S. Constitution provides for the "assistance of counsel to the accused 'in all criminal prosecutions,' is limited to criminal prosecutions as stated in the amendment, and as a result has had no bearing on the question of whether there is a right to counsel in a civil action or administrative proceeding." *State ex rel. Stephan v. O'Keefe*, 235 Kan. 1022, 1026, 686 P.2d 171 (1984). Kansas law also provides statutory rights to counsel in certain civil proceedings such as habeas corpus proceedings or those pertaining to the deprivation of parental rights. See *Mundy v. State*, 307 Kan. 280, 294-95, 408 P.3d 965 (2018) ("[A]lthough 'there is no constitutional right to effective assistance of legal counsel on collateral attacks because they are civil, not criminal actions,' Kansas does under some circumstances 'provide a *statutory* right to counsel on collateral attack.' [Citation omitted])"; K.S.A. 22-4506(b) (providing a conditional, statutory right to counsel during a 60-1507 proceeding). Furthermore, Kansas courts "have long held that '[p]roceedings on a petition for writ of habeas corpus filed pursuant to K.S.A. 60-1501 are not subject to ordinary rules of civil procedure.' [Citation omitted.]" *Denney v. Norwood*, 315 Kan. 163, 170, 505 P.3d 730 (2022). Panels of this court have relied on this general rule to deny a party's right—under ordinary rules of civil procedure—to discovery and default judgment in habeas proceedings. *Denney*, 315 Kan. at 170; See *White v. Shipman*, 54 Kan. App. 2d 84, 89, 396 P.3d 1250 (Kan. App. 2017); *Mitchell v. McKune*, No. 109,285, 2014 WL 349584, at *3 (Kan. App. 2014); but see *Johnson v. Zmuda*, 59 Kan. App. 2d 360, 365, 481 P.3d 180 (2021) (holding that K.S.A. 60-611, which governs the transfer of cases filed in the wrong venue, applies in K.S.A. 60-1501 proceedings).

At the hearing on Thomas' motion, the district court asked Thomas about his complaints and allowed him to explain some of the allegations, but according to the court it was unable to fully inquire unless Thomas waived his attorney-client privilege. Thomas

stated he did not understand and said, "I want a lawyer to help represent me with this." And the court denied that request.

The court also questioned Thomas about why he waited three years to bring his motion. In response, Thomas alleged that his attorney had prevented its earlier filing, claiming, "[H]e wouldn't let me do that and he's supposed to be representing me, but then he said he couldn't since I was making this particular allegation." Thomas claimed his attorney refused to tell him about the appellate process and told Thomas that he "would have to end up filing a motion" himself. The district court then explained that "the time you have to ask to set aside a judgment has passed."

After telling Thomas it would not appoint a new attorney for his current motion, the court then appears to make an inquiry into whether Thomas and his attorney had a conflict. See *State v. Valdez*, 316 Kan. 1, 25, 512 P.3d 1125 (2022) ("A defendant's articulation of dissatisfaction with counsel triggers a district court's duty to inquire into a potential conflict."). At one point, Thomas' attorney requested to speak; he explained that he had a conflict and could no longer represent Thomas and that he believed Thomas needed to waive the attorney-client privilege to allow him to speak freely. He explained that while representing Thomas, he believed "there was some concern[] about what the future looked like in that program in Larned." The attorney provided no further substantive information but stated that he hoped his "reputation with the court would precede itself." The court explained that it knew the attorney "to be a very trustworthy attorney with no problems with regard to this type of behavior" and that Thomas' allegations seemed "a little bit farfetched." The court also described the attorney as an "honorable attorney" who was "not going to lie to [Thomas]." Although the court did not know "why [the attorney] had sent [Thomas] some money," it concluded that because the money was not given before Thomas' stipulation, it could not have been coercive.

11

While a court need not appoint new counsel every time a defendant alleges a conflict with their counsel or ineffective assistance of counsel, it is required to analyze whether the defendant has a justifiable dissatisfaction warranting appointment of new counsel. See *Valdez*, 316 Kan. at 25. This inquiry requires the court to ask the defendant the basis for their dissatisfaction with their attorney and then to investigate the facts necessary to determine whether that dissatisfaction warrants appointing new counsel, but the court need not extensively evaluate every nuance to the allegations of ineffectiveness. *Valdez*, 316 Kan. at 25. The court made an inquiry in this case and did not appoint new counsel for Thomas for the purpose of the inquiry—but apparently it found a conflict because it agreed to appoint new counsel for Thomas to pursue an appeal.

While the court did not find Thomas' allegations of ineffective assistance of counsel credible, it failed to apply the correct legal standard in its analysis. First, Thomas' motion should have been construed under 60-1501 alleging ineffective assistance of counsel rather than a K.S.A. 60-260 motion seeking to amend or alter the court's earlier judgment. K.S.A. 60-260 provides no mechanism for KSVPA detainees to pursue claims of ineffective assistance of counsel. Moreover, K.S.A. 60-260 provides no remedy or mechanism for KSVPA detainees to request counsel; request to change their appointed counsel; or otherwise challenge proceedings related to their detention or representation in any related proceedings.

Second, had the court properly construed Thomas' motion as a K.S.A. 60-1501 motion, it then should have transferred the motion to the court of the jurisdiction where Thomas was detained. See K.S.A. 60-1501(a) (persons "may prosecute a writ of habeas corpus in the . . . county in which such restraint is taking place.") The statute requires detainees to file their motion in the county of confinement, and the proper course for a district court faced with one filed in the wrong county is to transfer the case to the correct venue. *Zmuda*, 59 Kan App. 2d at 366. Once transferred, that district court would then apply the standards for evaluating a habeas petition under K.S.A. 60-1501.

12

Before filing a civil action against the State through a K.S.A. 60-1501 motion, a KSVPA detainee must exhaust their administrative remedies "concerning such civil action," and file proof of that exhaustion. K.S.A. 2024 Supp. 59-29a24 (requiring KSVPA detainees to exhaust administrative remedies). However, here there is no administrative remedy concerning Thomas' civil action available to exhaust. The relevant state agency is tasked with promulgating administrative remedies related to civil actions within its facilities and control. See e.g., *Sperry v. McKune*, 305 Kan. 469, 484, 384 P.3d 1003 (2016) (administrative exhaustion is required for article 15 and 16 claims against the KDOC for inmate complaints about policies and conditions within KDOC's jurisdiction, acts by employees or inmates, acts within the facility, and loss or damage to the inmate's property). But Thomas' civil action did not seek a remedy within the control of the Secretary of the Kansas Department for Aging and Disability Services (KDADS) or for an event that occurred within a KDADS facility. Rather, Thomas claims ineffective assistance of counsel during his original commitment proceedings—a claim which has no administrative remedy and thus no exhaustion requirement. For example, inmates held in the custody of the KDOC typically pursue ineffective assistance of counsel claims through a K.S.A. 60-1507 motion—which does not have an exhaustion requirement—but as a KSVPA detainee, Thomas must use a K.S.A. 60-1501 petition for such claims. Pursuit of a claim of ineffective assistance of counsel through a K.S.A. 60-1501 rather than a K.S.A. 60-1507 motion does not implicate administrative exhaustion requirements.

As Thomas argues, the well-known *Strickland* test applies when analyzing a KSVPA detainee's allegations of ineffective assistance of counsel. *Ontiberos*, 295 Kan. at 27-28 (applying *Strickland* to counsel challenges from a person civilly detained under the KSVPA because the "right to counsel arises from a constitutional right similar to the rights attendant to a criminal trial"); see *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (establishing the two-prong ineffective assistance of counsel test for deficient performance claims established in criminal cases). Drawing from *Strickland*, the Kansas Supreme Court held that "a finding of ineffective assistance

13

of counsel based on deficient performance in a KSVPA proceeding requires a determination that (1) counsel's performance was deficient; and (2) counsel's deficient performance was sufficiently serious to prejudice the respondent and deprive him or her of a fair trial." *Ontiberos*, 295 Kan. at 31.

The State argues that if this court finds the district court should have construed Thomas' motion as a K.S.A. 60-1501, it could decide the merits because Thomas' motion is untimely under K.S.A. 2023 Supp. 60-1501. In an appeal from an ineffective assistance of counsel claim, an appellate court reviews de novo the mixed questions of law and fact. 295 Kan. at 31 (citing *Thompson v. State,* 293 Kan. 704, 715, 270 P.3d 1089 [2011]). Although there are some circumstances where an appellate court can resolve a claim of ineffective assistance of counsel for the first time on appeal because the merits are so obvious and the record is sufficiently developed, these situations are not common. See *State v. Hilyard*, 316 Kan. 326, 338-39, 515 P.3d 267 (2022) (finding that the merits of an ineffective assistance of counsel claim are not ordinarily addressed for the first time on appeal); *Ontiberos*, 295 Kan. at 27 ("We hold that a person detained under the KSVPA may raise an ineffective assistance of trial counsel claim on direct appeal using the *Van Cleave* remand procedure or through a collateral attack using K.S.A. 60-1501."); see *State v. Van Cleave*, 239 Kan. 117, 119, 716 P.2d 580 (1986) (finding that where a claim of ineffective assistance of counsel is raised for the first time on appeal, "[t]he trial judge should be the first to make a determination of such an issue and our refusal to consider the matter for the first time on appeal is sound."). Typically, a claim for ineffective assistance of counsel is not determined for the first time on appeal because of the need to develop sufficient facts for its analysis—which the appellate court cannot do.

While the State correctly notes that Thomas missed the 30-day timeframe for KSVPA detainees to file K.S.A. 60-1501 petitions, that timeframe is not without exception. While Thomas acknowledges that there is generally a very short timeframe for filing, he argues that the exception in K.S.A. 2023 Supp. 60-1507(f)(2) permits later

14

filing to prevent manifest injustice. See *Griffin v. Bruffett*, 53 Kan. App. 2d 589, 601, 389 P.3d 992 (2017) (applying the manifest injustice analysis found in *State v. Vontress,* 299 Kan. 607, 614, 325 P.3d 1114 [2014] to a K.S.A. 60-1501 petition filed prior to statutory incorporation of the definition); see K.S.A. 2024 Supp. 60-1507(f)(2).

The statute permitting KSVPA detainees to file claims for ineffective assistance of counsel under K.S.A. 60-1501 provides that "[e]*xcept as provided in K.S.A. 60-1507, and amendments thereto*, a patient in the custody of the secretary for aging and disability services pursuant to K.S.A. 59-29a01 et seq.," shall file a 60-1501 petition in accordance with its terms. (Emphasis added.) K.S.A. 2024 Supp. 60-1501(c). This court exercises unlimited review of statutory interpretation. *State v. Alvarez*, 309 Kan. 203, 205, 432 P.3d 1015 (2019). The most fundamental rule of statutory construction is that, if ascertainable, the Legislature's intent governs. *Stewart Title of the Midwest v. Reece & Nichols Realtors*, 294 Kan. 553, 557, 276 P.3d 188 (2012). Rather than just having a short filing deadline, the statute includes prefatory language stating that its time limitations are subject to the provisions of K.S.A. 60-1507, which must mean something. This statutory construction dictates that the timeline for KSVPA detainees to file a petition under K.S.A. 60-1501(c) is also subject to the conditions or exceptions set forth in K.S.A. 60-1507. Previous panels of this court have found the same. *In re Care & Treatment of Howard*, No. 108,552, 2014 WL 113428 (Kan. App. 2014) (unpublished opinion) (finding that the manifest injustice exception in K.S.A. 60-1507(f)(2) applied in a petition filed under K.S.A. 60-1501); see also *Griffin*, 53 Kan. App. 2d at 601 (applying manifest injustice analysis to petition filed under prior version of K.S.A. 60-1501); but see *White v. State*, No. 117,186, 2017 WL 6062936, at *4-5 (Kan. App. 2017) (unpublished opinion) (finding that the *Howard* conclusion was mere dicta and that the manifest injustice exception in K.S.A. 60-1507[f] did not extend to a petition filed under K.S.A. 60-1501), *rev. denied* 307 Kan. 994 (2018).

As explained in K.S.A. 60-1507, its time limitations may be extended to prevent manifest injustice and provides:

> "(A) For purposes of finding manifest injustice under this section, the court's inquiry shall be limited to determining why the prisoner failed to file the motion within the one-year time limitation or whether the prisoner makes a colorable claim of actual innocence. As used herein, the term actual innocence requires the prisoner to show it is more likely than not that no reasonable juror would have convicted the prisoner in light of new evidence.
> (B) If the court makes a manifest-injustice finding, it must state the factual and legal basis for such finding in writing with service to the parties.
> "(3) If the court, upon its own inspection of the motions, files and records of the case, determines the time limitations under this section have been exceeded and that the dismissal of the motion would not equate with manifest injustice, the district court must dismiss the motion as untimely filed." K.S.A. 2024 Supp. 60-1507(2)-(3).

It is undisputed that the district court failed to address Thomas' allegations of ineffective assistance of counsel or analyze the timeliness of Thomas' motion pursuant to K.S.A. 2023 Supp. 60-1501 and failed to apply the manifest injustice standard. Given the record on appeal, this court is unable to do so for the first time on appeal.

CONCLUSION

Thomas filed a motion that alleged ineffective assistance of counsel which should have been construed as a K.S.A. 60-1501 petition, but the district court construed it as a K.S.A. 60-260 motion to alter or amend a judgment. Accordingly, the district court failed to apply the correct legal standard in its review and its denial is reversed, and this case is remanded for reconsideration. On remand, the case must be transferred to the correct venue for that court's consideration pursuant to K.S.A. 60-1501, including whether the motion is untimely considering the manifest injustice exception in K.S.A. 2024 Supp. 60-

16

1507(f)(2). This remand does not mean Thomas is entitled to relief on his claim but merely seeks to ensure the proper standard is applied to Thomas' claims.

Reversed and remanded with directions.

\* \* \*

ISHERWOOD, J., dissenting: I respectfully dissent as I do not share the majority's willingness to construe Lester D. Thomas' petition as a claim under K.S.A. 60-1501 and, further, provide him with an exemption from the timing requirement virtually every other inmate is statutorily mandated to adhere to when filing a K.S.A. 60-1501 petition. Thus, I agree with the district court's ultimate determination that Thomas was not entitled to the appointment of counsel as he requested, although, as explained in greater detail below, I arrive at that conclusion via a different route.

The record indicates that Thomas filed a pro se "Motion to Withdraw Counsel and Re-Appointment of Counsel" three years after his commitment proceeding occurred. The contents of that motion reflect a request from Thomas for the district court to appoint counsel to assist him with challenging the representation rendered by his counsel during the commitment process. Specifically, Thomas' singular request for relief was for the district court to "appoint an appeals attorney to represent this Respondent because of the ineffective and misrepresentation with coercion and bribery through financial means of my present attorney." Any lingering confusion with respect to Thomas' intent in filing the motion is eliminated by the transcript of the hearing on that motion where he informed the district court that he "wanted to have a lawyer so I can—to represent me based on this," that he had "grounds" to have his stipulation "overturned" and he "want[ed] a new attorney because [he's] going to argue this" and "prove that [he] was bribed and coerced."

17

It is without question that persons detained under the Kansas Sexually Violent Predator Act (KSVPA), like Thomas, are entitled to a mechanism by which they can raise claims concerning the effectiveness of their trial counsel's assistance and that K.S.A. 60-1501 is the appropriate avenue by which to pursue such relief. *In re Care & Treatment of Ontiberos*, 295 Kan. 10, 27, 287 P.3d 855 (2012). But the filing at issue is not a K.S.A. 60-1501 petition nor is there any indication Thomas intended for his "Motion to Withdraw Counsel and Re-Appointment of Counsel" to be received as one filed under K.S.A. 60-1501. I recognize our obligation to interpret pro se pleadings based upon their contents and not solely on their title or labels. *State v. Redding*, 310 Kan. 15, 18, 444 P.3d 989 (2019). But that duty is not without limitations. Specifically, a court is not required to afford a pro se motion the full breadth of conceivable interpretations, particularly where the litigant repeatedly asserts specific grounds for relief and offers arguments tailored to those precise claims as Thomas did here. *State v. Ditges*, 306 Kan. 454, 457-58, 394 P.3d 859 (2017).

My analysis of Thomas' case aligns with those principles. When the record is viewed in its entirety, from the opening paragraph of his motion through his arguments during the hearing in support of that motion, it is clear that Thomas was pointedly and solely seeking the appointment of counsel to help him litigate an ineffective assistance of counsel claim against his trial attorney. Thus, liberal interpretation of his pro se filing is neither warranted nor required.

With Thomas' motivation clear, the relief he sought simply was not available to him. An individual who decides to pursue relief under K.S.A. 60-1501 is not entitled to the assistance of counsel in preparing their K.S.A. 60-1501 claims as Thomas requested here. Rather, any such right to counsel is not triggered until after the district court has determined that the petition cannot be summarily denied and requires an evidentiary hearing. *Griffin v. Bruffett*, 53 Kan. App. 2d 589, 606-07, 389 P.3d 992 (2017) (citing *In re Care & Treatment of Ontiberos*, 295 Kan. at 27); *Merryfield v. State*, 44 Kan. App. 2d

18

817, 826, 241 P.3d 573 (2010). Accordingly, I find the district court properly denied Thomas' request for the appointment of counsel, but do so under the theory that it was right for the wrong reason. *State v. Oehlert*, 290 Kan. 189, 191, 224 P.3d 561 (2010) (A district court may be affirmed on appeal on a theory not raised below when it is right for the wrong reasons.).

I also cannot join in the majority's decision because it contemplates returning Thomas' motion to the district court with directions that it be transferred to the district court in the county of confinement in accordance with the jurisdictional mandates of K.S.A. 2024 Supp. 60-1501. That course of action essentially makes Thomas the beneficiary of a considerable procedural windfall.

Even though Thomas is self-represented, "pro se litigants must still follow procedural rules." *Sperry v. McKune*, 305 Kan. 469, Syl. ¶ 8, 384 P.3d 1003 (2016); see also *Joritz v. University of Kansas*, 61 Kan. App. 2d 482, 498, 505 P.3d 775 (2022) ("Under Kansas law, the pro se liberal construction rule does not mean that pro se litigants can ignore procedural requirements."). K.S.A. 2023 Supp. 60-1501(b) dictates that such petitions must be filed within 30 days *from the date the action complained of became final*, although that time may be tolled during the pendency of timely efforts to exhaust administrative remedies. See *Hughes v. Schnurr*, No. 118,552, 2018 WL 3673158, at *2 (Kan. App. 2018) (unpublished opinion). This 30-day time limit is classified as a statute of limitations. *Battrick v. State*, 267 Kan. 389, 401, 985 P.2d 707 (1999); *Altom v. Norwood*, No. 120,742, 2019 WL 4892055, at *3 (Kan. App. 2019) (unpublished opinion). To be clear, as this court has previously held, an inmate's failure to timely file a K.S.A. 60-1501 petition *bars the petition from consideration*. *Peterson v. Schnurr*, 57 Kan. App. 2d 56, 58, 447 P.3d 380 (2019). But the majority's order to transfer Thomas' motion as one it has independently elected to classify as a K.S.A. 60-1501 petition, over three years after the occurrence of the action he complains of,

exempts Thomas from the timing requirement that strictly governs the window in which individuals must file their K.S.A. 60-1501 petition.

The actions by counsel that Thomas seeks to challenge occurred during his stipulation proceeding in 2019. The journal entry documenting his commitment as a sexually violent predator was filed July 25, 2019, and that is when the 30-day time period began to run. Thomas did not take any formal action on his complaints until the filing of the current motion on September 9, 2022, just over three years after the time to file his petition expired. Thomas' motion contains no explanation for the untimely filing, although that may be due in part to the fact that he never intended it to be received as anything other than a simple request for the appointment of counsel. Nevertheless, during the hearing, Thomas informed the district court that during the window of delay, he repeatedly asked counsel—the same attorney he claims was ineffective—to file his motion, and counsel consistently responded that he was unable to do so given the nature of Thomas' claims.

For the first time on appeal, Thomas directs us to those opinions from this court where untimely K.S.A. 60-1501 petitions were reviewed using the manifest injustice rubric applicable to untimely K.S.A. 60-1507 motions. Issues not raised before the district court cannot be raised on appeal unless, pursuant to Supreme Court Rule 6.02(a)(5) (2025 Kan. S. Ct. R. at 36), the appellant explains why an exception to the general rule is applicable. *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018) (explaining that Supreme Court Rule 6.02[a][5] is "strictly enforce[d]"); *Gannon v. State*, 303 Kan. 682, 733, 368 P.3d 1024 (2016). Thomas does not argue that any exceptions to the rule are applicable in his case, therefore, his manifest injustice argument is not properly before us for review.

Even so, manifest injustice has been described as "something obviously unfair or shocking to the conscience." *State v. Terning*, 57 Kan. App. 2d 791, Syl. ¶ 5, 460 P.3d

20

382 (2020). It is Thomas' burden to establish that his untimely K.S.A. 60-1501 petition meets the manifest injustice exception and thereby necessitates extension of the time limit. *State v. Roberts*, 310 Kan. 5, Syl. ¶ 5, 444 P.3d 982 (2019). While his brief offers a lengthy analysis of why, in his view, the manifest injustice theory is generally applicable in the context of a K.S.A. 60-1501 petition, he fails to apply its criteria to his case specifically. That is, he does not honor us with any details which substantiate the existence of manifest injustice in his case. Rather, he simply conclusively states that his untimely K.S.A. 60-1501 petition is a favorable candidate for being the first where manifest injustice is found to exist. I am unwilling to also relieve Thomas of his burden to establish the exception. Therefore, that only leaves us with the statements he made at the hearing as any conceivable explanation for his delay. Again, those statements were that he repeatedly requested his trial counsel to file his motion and was continually met with counsel's explanation that counsel could not personally file the motion given the nature of Thomas' claims. I am not persuaded that Thomas' decision to make repeated trips to a consistently dry well for the span of three years equates with "something obviously unfair or shocking to the conscience." *Terning*, 57 Kan. App. 2d 791, Syl. ¶ 5. Particularly where his decision to file the instant motion pro se evidences his ability to pursue relief independently when it is his desire to do so.

Thomas' pro se motion simply sought the appointment of counsel to assist him in pursuing a challenge to the allegedly substandard representation his attorney provided during the commitment proceeding, relief he is not fundamentally entitled to. Accordingly, I would affirm the district court's denial of Thomas' motion as right for the wrong reason.